# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs)  **No. 13-0767** (Berkeley County 10-F-37)

**Nathan S.,**
**Defendant Below, Petitioner**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Nathan S.,[1] by counsel Duane C. Rosenlieb, Jr., appeals his conviction of four counts of abuse of a child causing injury. The Circuit Court of Berkeley County sentenced petitioner by order entered May 30, 2013. The State of West Virginia, by counsel Cheryl K. Saville, filed a response, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

During the February of 2010 term of court, petitioner was indicted by a Berkeley County grand jury on thirteen counts of child abuse by a parent, guardian, or custodian causing injury pursuant to West Virginia Code § 61-8D-3(a). The five victims named in the indictment were one of petitioner's two biological children and four of his wife's five biological children. All five child victims resided with petitioner and his wife and ranged in age from five to fourteen when the alleged abuse occurred.[2]

Petitioner's indictment alleged that, between September of 2008 and April of 2009, petitioner:

---

[1] Consistent with our practice in cases involving sensitive matters, we use petitioner's first name and last initial, and the child victims' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990); *see also* W.Va. R. App. P. 40(e)(1).

[2] Petitioner's wife was indicted by the same grand jury on five counts of child abuse causing injury pursuant to West Virginia Code § 61-8D-3(a).

(a) punched his wife's daughter K.F.[3] in the side (Count One) and burned her with a cigarette (Count Two);

(b) shot his wife's son C.F. with a BB gun (Count Three), burned him with a cigarette (Count Four), and punched him in the arm (Count Five);

(c) shot petitioner's wife's son A.F. with a BB gun (Count Six), choked him (Count Seven), shot him with a bottle rocket (Count Eight), and struck him with a metal spoon causing bleeding (Count Nine);

(d) burned his wife's son I.F. with a cigarette (Count Ten) and choked him (Count Eleven); and

(e) struck his own daughter H.S. with a metal spoon on the leg (Count Twelve) and hit her in the eye with a baseball bat (Count Thirteen).

Prior to trial, the State filed a "Notice of Intent to use 404(b) Evidence and Notice of Intent to Use Intrinsic Evidence" (the "State's Notice"). The State sought to admit acts that petitioner allegedly perpetrated in counties other than Berkeley County (where his indictment was filed and where he was tried). The State claimed that petitioner and his wife had abused their children in multiple jurisdictions, but had moved frequently to avoid an investigation by the West Virginia Department of Health and Human Resources ("DHHR").[4] The State also sought to admit acts petitioner allegedly had perpetrated against his wife's oldest daughter, A.F., who was not named as a victim in petitioner's indictment. The State claimed these other acts were intrinsic to the crimes currently charged against petitioner. The defense responded with a motion to dismiss the State's Notice on the ground that it was "insufficient" or "deficient." The trial court denied petitioner's motion to dismiss the State's Notice by order entered November 5, 2010.

Thereafter, the circuit court held a *McGinnis* hearing[5] (over three separate days) regarding the State's Notice. Petitioner's wife's oldest daughter, A.F., who was then twenty-three years old, testified that, when she was thirteen, petitioner had gotten her drunk and raped her. A.F. claimed that her mother saw the rape, and said only that, "If you want him, you can have him." A.F. also testified that she believed petitioner had "prostituted [her] to family and friends." In regard to the latter claim, A.F. testified that (1) petitioner's cousin sexually assaulted

---

[3] Consistent with our practice in cases involving sensitive matter, we use the child victims' initials herein. *See* W.Va. R. App. P. 40(e)(1).

[4] The children reportedly lived in Berkeley, Hampshire, and Morgan Counties in West Virginia, and also in the States of Delaware and Virginia.

[5] A *McGinnis* hearing is an in-camera hearing at which a trial court determines by a preponderance of the evidence the sufficiency of any evidence which the State intends to introduce at trial pursuant to Rule 404(b) of the West Virginia Rules of Evidence. *See generally State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

her twice when she was fifteen; (2) petitioner's stepbrother assaulted her when she was sixteen; (3) petitioner's friend sexually assaulted her during the winter of 2007; and (4) petitioner and her mother allowed her to be involved with a man who was twenty years older than she. A.F. stated that these events happened in Hampshire County. A.F. also testified to other forms of abuse and neglect she experienced in petitioner and her mother's home. A.F. claimed that petitioner provided her with alcohol, cigarettes, and drugs when she was a teenager, and that petitioner and her mother (1) ate better quality food than did the children; (2) locked up the food in the home so that the children often went hungry, which was particularly problematic for A.F. given that she was diabetic; (3) forced the children to live in deplorable conditions; (4) made the children perform foot rubs on them in exchange for food; and (5) sold the children's toys and presents to obtain beer and cigarettes.

The children named in the indictment also testified during petitioner's *McGinnis* hearing. All made claims similar to those made by A.F., with the exception that none of the other children claimed that petitioner had sexually assaulted them or prostituted them to family or friends.

At the conclusion of the *McGinnis* hearing, the trial court found, by a preponderance of the evidence, that the majority of the acts alleged in the State's Notice occurred and were committed by petitioner. The trial court also found that the State made a sufficient showing that the evidence was relevant pursuant to Rules 401 and 402 of the West Virginia Rules of Evidence. The circuit court further found that, pursuant to the Rule 403 balancing test, many—but not all—of the incidents described by A.F. and the child victims named in the indictment were intrinsic in nature to the crimes charged against petitioner given that the abuse was longstanding and the family moved frequently in an effort to avoid the interference of the DHHR.

Petitioner and his wife were tried together. Their eleven-day trial began on January 29, 2013. On February 13, 2013, the jury found petitioner guilty on four of the thirteen counts of child abuse causing injury: Count One (punching), Count Seven (choking), Count Eleven (choking), and Count Twelve (hitting with a metal spoon).[6]

Following petitioner's trial, the State filed a recidivist information against petitioner alleging that he had previously been convicted of two qualifying felony offenses (both of which were driving under the influence in the third degree). Petitioner's recidivist trial commenced on April 4, 2013. That same day, a jury found petitioner to be the same person who had previously committed the two named felonies.

On May 30, 2013, the circuit court denied petitioner's post-trial motions and sentenced petitioner to an indeterminate term of one to five years in prison for Counts Seven, Eleven, and Twelve. Those sentences were ordered to be served concurrently. With regard to petitioner's conviction on Count One, the circuit court—in light of petitioner's recidivist status—sentenced petitioner to life in prison with the possibility of parole. The circuit court then ordered that petitioner's life sentence run consecutively to petitioner's concurrent one to five year sentences. The circuit court also ordered that, upon petitioner's release from prison, he must serve a ten year

---

[6] Petitioner's wife was found guilty on four counts of child abuse causing injury.

period of supervised release and register on the child abuse registry as a convicted child abuser for a period of ten years.

Petitioner now appeals his convictions.

On appeal, petitioner raises four assignments of error, the first three of which he argues together. Petitioner claims that the circuit court abused its discretion by allowing the introduction of evidence under the State's Notice (1) where the State's Notice was deficient as a matter of law; (2) where the evidence of petitioner's alleged sexual misconduct regarded his non-custodial step-daughter, A.F., who was not named as a victim in petitioner's indictment; and (3) where A.F.'s testimony that petitioner allegedly "passed [A.F.] around," so that friends and relatives could sexually abuse/assault her, had no evidentiary support.

We review claims regarding the admission of evidence under the following standard of review:

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 57, 87 S.E.2d 541, 544 (1955), overruled on other grounds by *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 2, *State v. Harris*, 230 W.Va. 717, 742 S.E.2d 133 (2013). Further, "'[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." Syl. Pt. 3, *Harris*, 230 W.Va. at 717, 742 S.E.2d at 134. However, the Court's review of evidence admitted pursuant to Rule 404(b) of the West Virginia Rules of Evidence involves the following additional analysis:

> The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

*State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30. (1996). We also note that "[t]his Court reviews disputed evidence in the light most favorable to its proponent, [in this case, the State,] maximizing its probative value and minimizing its prejudicial effects. *Id.* at 312, 470 S.E.2d at 631; *see also State v. McGinnis*, 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994).

Pursuant to Syllabus Point 1 of *McGinnis*,

[w]hen offering evidence under Rule 404(b) of the West Virginia Rules of Evidence, the prosecution is required to identify the specific purpose for which the evidence is being offered and the jury must be instructed to limit its consideration of the evidence to only that purpose. It is not sufficient for the prosecution or the trial court merely to cite or mention the litany of possible uses listed in Rule 404(b). The *specific and precise purpose* for which the evidence is offered must clearly be shown from the record and that purpose alone must be told to the jury in the trial court's instruction.

193 W.Va. at 151, 455 S.E.2d at 520 (emphasis added). Rule 404(b) lists those possible uses as follows:

Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Petitioner claims that the State's Notice was legally insufficient and/or defective because the State did not identify the "specific and precise purpose" for the admission of the evidence as required by *McGinnis* but, instead, the State merely parroted the language in Rule 404(b), as follows: "The State seeks to admit the 404(b) evidence under the theories of intent, knowledge, opportunity, identity, and lack of mistake or accident. The State further seeks to admit this evidence as intrinsic under the rulings of *State v. Cyrus*, 222 W.Va. 214, 664 S.E.2d 99 (2008)."

The law with respect to a notice to enter Rule 404(b) evidence comes from the rule itself which requires, in pertinent part, that the State "provide reasonable notice . . . of *the general nature* of any such evidence it intends to introduce at trial." (Emphasis added). The circuit court found that the State's Notice, which was sixteen-pages long and listed one hundred and twenty-nine alleged incidents of child abuse by petitioner, provided the general nature of the evidence it intended to use at trial. Importantly, the State's Notice does not list all of the reasons found in Rule 404(b) to admit evidence, but only those reasons the State believed were relevant to this case. Moreover, the State also sought to admit the evidence under the reasoning found in this Court's opinion in *Cyrus*,[7] a copy of which was attached to the State's Notice. Further, prior to any hearing on the State's Notice, the State filed a "Memorandum in Support of Items Previously Noticed as 404(b) Being Ruled as Intrinsic Evidence." In that document, the State explained the relevant law and the reasons it sought to enter the evidence listed in the State's Notice. Thereafter, the trial court held a three-day *McGinnis* hearing on the State's Notice. On this

---

[7] In *State v. Cyrus*, 222 W.Va. 214, 664 S.E.2d 99 (2008), we held (1) that evidence showing the defendant had sexually assaulted and abused victims in another county was inextricably intertwined with the sexual offenses charged in the current case; and (2) such intrinsic evidence is not governed by Rule of Evidence 404(b).

record, we do not find that the State's Notice was legally insufficient or defective, or that petitioner was prejudiced by the State's Notice.

Petitioner next argues that the evidence regarding his alleged acts against A.F. were not intrinsic to the conduct that gave rise to petitioner's indictment because the uncharged acts alleged by A.F. (1) occurred ten years before the trial in this matter and, therefore, were too remote in time to be relevant; (2) were against a person who was not named as a victim in the indictment; (3) were alleged to have occurred in a county other than the one in which petitioner's indictment was filed; (4) were unrelated to the crimes charged in petitioner's indictment; and (5) were unsupported by any evidence other than A.F.'s bare allegations which were internally contradictory. Petitioner highlights that none of the acts alleged by A.F. ever resulted in criminal charges. Petitioner contends that he was significantly prejudiced by the admission of A.F.'s testimony because, pursuant to Rule of Evidence 403, its probative value was greatly outweighed by the danger of unfair prejudice to petitioner.

The trial court did not err in admitting intrinsic evidence of petitioner's other bad acts at trial. Pursuant to *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996),[8] evidence of "other bad acts" is admissible *without analysis under 404(b)* when the trial court determines that the evidence is intrinsic to the crimes charged in the indictment. Here, the trial court properly found that a majority of the evidence proposed in the "State's Notice" was intrinsic to the crimes charged in petitioner's indictment. Therefore, no notice or *McGinnis* hearing was required prior to the admission of the evidence. Nevertheless, the record on appeal shows that, on the first day of the three-day *McGinnis* hearing in this matter, Judge Gina Groh examined each piece of proposed evidence as though it was *extrinsic*. Judge Groh then made detailed and lengthy findings and conclusions that included (1) whether a piece of evidence was relevant, (2) the purpose for which the piece of evidence could be considered by the jury, and (3) whether the probative value of that piece of evidence was outweighed by any danger of unfair prejudice to petitioner.

---

[8] *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), provides as follows:

> In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990): "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as res gestae-as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is . . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "*res gestae*"'"). (Citations omitted). . . .

196 W.Va. at 313 n.29, 470 S.E.2d at 632 n.29.

Following Judge Groh's appointment to the federal bench, Judge John Yoder was assigned the case. Judge Yoder presided over the remaining two days of the *McGinnis* hearing and the trial in this matter. The record on appeal reveals that Judge Yoder reviewed each additional piece of evidence to determine whether it was intrinsic and whether it violated Rule 403. Additionally, at petitioner's trial, Judge Yoder gave the jury a limiting instruction for each piece of intrinsic evidence when it was entered and again in the final jury charge. The parties agreed to the instruction which clearly stated the State's purpose for admitting the evidence. As such, petitioner was protected from any undue prejudice. Based on this record, we find that the trial court did not err in admitting at trial the intrinsic evidence of which petitioner complains.

As for the admission of A.F's testimony regarding petitioner's alleged rape and his failure to protect her from the sexual abuse committed by third parties, the trial court found that petitioner's long-term and pervasive physical, sexual, and emotional abuse of the child victims in this case was one continuing act and, therefore, intrinsic to the crimes charged in petitioner's indictment. As such, A.F.'s testimony provided a snapshot of the abuse petitioner perpetrated upon the children involved in this case, Further, as noted above, the trial court heard A.F.'s proposed testimony at the *McGinnis* hearing, treated it as if it was extrinsic and governed by 404(b), and then found, by a preponderance of the evidence, that the acts A.F. alleged had occurred and that petitioner had committed them. The trial court also found that the evidence was relevant as proof of motive, intent, and knowledge, and found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to petitioner. Finally, the trial court gave a limiting instruction during A.F.'s testimony and again when charging the jury. Based upon this record, we find that the circuit court did not err in admitting A.F.'s testimony as intrinsic to the crimes charged in petitioner's indictment.

Petitioner next argues that under Rule 7 of the West Virginia Rules of Criminal Procedure the circuit court erred in its November 5, 2010, order by denying petitioner's motion for a bill of particulars given the deficiency of the State's Notice. Further, petitioner claims that the circuit court erred in finding that there was no legal precedent for challenging a defective Rule 404(b) notice via a motion for a bill of particulars. (In the motion, petitioner asked the State to provide information regarding the dates and location of each incident alleged in petitioner's indictment.)

As we found above, the State's Notice was not deficient. However, even if the State's Notice was deficient, Rule of Criminal Procedure 7 provides that a defendant may move for a bill of particulars to obtain facts and circumstances underlying a defendant's "indictment or information." Hence, Rule 7 does not apply to notices regarding the State's use of Rule 404(b) or intrinsic evidence. As such, we find no error in regard to this assignment of error.

Petitioner's fourth and final assignment of error is that the trial court's cumulative errors in this case denied his constitutional right to a fair trial. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S .E.2d 550, 551–52 (1972) (The cumulative effect of numerous errors may result in the setting aside of a criminal conviction.) However, having found that the trial court committed no error, a cumulative error analysis is not applicable herein.

For the foregoing reasons, we affirm.

7

Affirmed.

**ISSUED:**  November 21, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

**DISSENTING AND WRITING SEPARATELY:**

Justice Menis E. Ketchum, dissenting:


Five years ago, I wrote about my chagrin to find, routinely, "prosecutors are using 'bad acts' evidence to prejudice defendants and to divert jurors' attention from the evidence surrounding the charged crime." *State v. Willett*, 223 W.Va. 394, 401, 674 S.E.2d 602, 609 (2009) (Ketchum, J., concurring). I noted then that the "abusive use of uncharged 'bad acts' evidence" seemed to be popping up in virtually every criminal appeal presented to this Court. *Id.*

This appeal is a classic example of an over-zealous prosecutor piling on the bad acts evidence. Call it "intrinsic evidence," "404(b) evidence," evidence of bad character, call it whatever, the prosecutor poured irrelevant evidence of past bad acts into the trial to make the petitioner look bad. Like the majority of this Court, I have looked at the record and I am certain the petitioner is guilty as sin of abusing children. I am compelled to dissent because, guilty or not, I don't think he got a fair trial. He got kangarooed. More importantly, the routine introduction of this type of inadmissible evidence will lead to the conviction of innocent people who may have bad character.

The petitioner was indicted for the crime of "abuse of a child causing injury." The petitioner was not accused of sexually assaulting or sexually abusing any of the children named in his indictment. He was accused of physical abuse: burning a kid with a cigarette, shooting another with a BB gun, punching, choking, shooting with a bottle rocket, and so on.

Nevertheless, at petitioner's trial, the trial court allowed the State to admit bad acts evidence against petitioner suggesting that, ten years prior to his trial in this matter, he had raped his then-thirteen-year-old step-daughter. The State was also allowed to admit evidence suggesting he failed to protect his step-daughter from the sexual advances of his friends and family members. The petitioner's step-daughter, who is now an adult, was not named as a victim in the indictment. The trial court somehow found that the step-daughter's alleged rape and petitioner's failure to protect his stepdaughter from his friends and family constituted "intrinsic evidence" and/or "a continuing act" that was necessary for a "'full presentation' of the case, or is

8

. . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the 'res gestae.'"

The duty of a prosecutor is to seek justice, not convictions. *Nicholas v. Sammons*, 178 W.Va. 631, 632, 363 S.E.2d 516, 518 (1987). *See also* Standard 3-1.2(c), *American Bar Association Standards for Criminal Justice* (3d ed. 1993) ("The duty of the prosecutor is to seek justice, not merely to convict."). "As the primary responsibility of a prosecuting attorney is to seek justice, his affirmative duty to an accused is fairness." Syl. Pt. 2, *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974).

Even if prosecutors *can* get a jury to convict someone, it does not necessarily mean they *should* ask them to do so. More importantly, just because a prosecutor can convince a judge into admitting inadmissible bad acts evidence doesn't mean a prosecutor should go all out to get the evidence admitted. It's a question of fairness, and the perception of fairness.

In this case, the prosecutor snookered a judge into admitting totally irrelevant, phenomenally prejudicial evidence of a decade-old uncharged rape that may or may not have happened. I say "may not have happened" because no police officer or prosecutor ever charged the petitioner for the alleged offense. And even with this bad acts evidence, the prosecutor still only got convictions on four counts of a thirteen-count indictment.

In sum, I dissent. The prosecutor in this case had a dead lock for a conviction. Why does a prosecutor who is confident on their feet need to put in old, irrelevant bad act evidence?