IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1766

_____

**FILED**

April 11, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA
Respondent

v.

HENRY B. HARRIS,
Petitioner

_____

Appeal from the Circuit Court of Hancock County
The Honorable James P. Mazzone, Judge
Case No. 02-F-48

AFFIRMED

_____

Submitted: March 27, 2013
Filed: April 11, 2013

Brent A. Clyburn, Esq.                        Patrick Morrisey
Law Office of Brent A. Clyburn              Attorney General
Wheeling, West Virginia                      Thomas W. Rodd, Esq.
Counsel for the Petitioner                   Assistant Attorney General
                                             Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

JUSTICE WORKMAN concurs, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect.  In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice.  The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings."  Syllabus Point 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

2.      "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."  Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 57, 87 S.E.2d 541, 544 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

3.      "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard."  Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

Per Curiam:

In this appeal from the Circuit Court of Hancock County, a defendant appeals his conviction for two counts of sexual assault in the first degree against a minor. The defendant asserts that the circuit court should not have allowed the victim to testify that the defendant assaulted her more than ten times or a dozen times. The defendant did not object to this testimony at trial.

After careful review of the record, we find no error and affirm the defendant's conviction.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2002, defendant Henry B. Harris was indicted for seven counts of criminal sexual conduct. The indictment alleged that the defendant committed these crimes against four female victims who, at the time of the incidents between 1974 and 1985, were minors. The circuit court later granted the defendant's motion to sever the counts of the indictment into individual trials for each victim.

In December 2002, the State proceeded to try Counts One and Two of the indictment, which both alleged that the defendant committed Sexual Assault in the First

1

Degree by "unlawfully and feloniously engaging in sexual intrusion"[1] with the victim, who we refer to by her initials as "M.R.W." Count One alleged an assault occurred "[f]rom on or about January 1, 1982 through December 5, 1983," while Count Two alleged an assault "from on or about December 6, 1982 through December 31, 1984." M.R.W. was between four and six years old during this time period; the defendant was between 40 and 42 years old.

Prior to trial of the counts involving M.R.W., the defendant brought a motion in limine to exclude any evidence of unrelated criminal sexual conduct. The State assured the circuit court that its witnesses would testify within "the confines of the particular counts of the indictment" being tried. Thereafter, the trial court granted the defendant's motion in limine.

At trial, a woman named B.J.B.[2] testified that the defendant was her uncle and that M.R.W. was her younger sister. During the time specified in the indictment,

---

[1] The statute defining sexual assault in the first degree, *W.Va. Code*, 61-8B-3(a)(3) [1976], stated,

> (a) A person is guilty of sexual assault in the first degree when: . . .
> (3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old.

The statute was amended by the Legislature in 1984, and has been modified several times since. No modifications were made affecting the outcome of this case.

[2] Count Seven of the indictment alleged that the defendant had sexually assaulted B.J.B. at some point between June 1976 and August 1977, when B.J.H was about 10

(continued . . .)

B.J.B. said that the defendant frequently visited and stayed for months at a time at different family members' dwellings in Hancock County. Another woman, C.S.V.,[3] testified she too was an older sister of M.R.W. and gave similar testimony. C.S.V. said that she and M.R.W. lived together as children in the late 1970's and early 1980's. Like B.J.B., she testified that the defendant never had a permanent residence, and that he would stay at different family members' dwellings around Hancock County when she and M.R.W. were children.

Between 1982 and 1984, B.J.B., C.S.V., and the victim, M.R.W., testified that they too lived at different family members' dwellings, but specifically mentioned two locations in Hancock County. One was a home on Waterford Park Road, on Route 208. The other was a home in Newell, West Virginia, on Mahaffey Road.

The victim, M.R.W., testified that during the relevant time period the defendant babysat M.R.W. "quite often" in Hancock County. She testified to two specific criminal sexual acts by the defendant, in two specific places. First, she stated that while the defendant was babysitting her at the house in Newell, when he thought she

years old. Count Seven proceeded to trial, and on October 31, 2002, a jury acquitted the defendant.

[3] Count Five of the indictment alleged that the defendant had sexually assaulted C.S.V. at some point between August 1978 and December 1979, when C.S.V. was between eight and nine years old. This count was dismissed by the prosecutor after the defendant's conviction in this case.

was sleeping, he put his penis in her mouth; when someone walked in, he quit. The second example she testified to was at the home on Route 208, where she said,

> I was sleeping in the room in the back he had came in there. It was late at night and he come out of the kitchen and had something in his hand. I don't know if it was a hot dog or something. I was lying on the couch sleeping and he was trying to place this in me. I started moving around and started crying . . . and he quit.

M.R.W. said that the defendant would threaten to harm her or her mother if she told anyone about his actions.

The defendant's current appeal centers largely on two series of questions by the prosecutor and the answers by M.R.W. After asking M.R.W. about the two specific incidents, the following exchange occurred:

> Q. Now, you said [what happened on Route] 208 that would have been a probably later incident in the 80's.
>
> A. Yeah.
>
> Q. So, you would have been five or six.
>
> A. Yes.
>
> Q. How often did the incidents occur?
>
> A. Every time he . . . watched me.
>
> Q. Ten times?
>
> A. More than ten; a dozen.
>
> Q. Over a period, span of time?
>
> A. Yes.

4

The defendant did not object to these questions and answers.

On redirect examination, the prosecutor asked M.R.W. a similar line of questions:

Q. So, between January 1, '82 and December 15, '83, he did this to you or similar actions to you?

A. Yes, he did.

Q. Between December 6, '82 and December 31, 1984, he did this or similar actions to you?

A. Yes, he did.

Q. More than once?

A. More than once.

Q. More than twice?

A. More than twice.

Again, the defendant did not object to these questions and answers.

The jury found the defendant guilty on both counts of sexual assault in the first degree. The circuit court sentenced the defendant to 10 to 20 years confinement on each count, to run consecutively (that is, 20 to 40 years in the penitentiary), and to pay a total fine of $20,000. The prosecution dropped the remaining charges against the defendant.

The defendant now appeals his conviction.[4]

## II.
## STANDARD OF REVIEW

The defendant asserts that the circuit court erred by allowing the prosecution to admit evidence alleging the defendant committed other, uncharged sexual assaults against the victim. Because the defendant did not object to this evidence, we must presume that he is asserting its admission was plain error that the circuit court should have noticed. *See* Rule 52(b), *W.Va. Rules of Criminal Procedure*; Rule 104(d), *W.Va. Rules of Evidence*.[5] In Syllabus Point 7 of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), we offered the following limitation on plain error arguments:

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this

---

[4] The defendant has been repeatedly resentenced over the years, and has had several attorneys appointed as appellate counsel. Current counsel was appointed in a sentencing order entered in April 2011, and the defendant was again resentenced on November 10, 2011. Still, the instant nine-page petition for appeal (which includes the signature page) was not filed until March 12, 2012.

[5] Rule 52(b) of the *Rules of Criminal Procedure* states, "Plain errors or defects affecting substantial rights may be noticed even though they were not brought to the attention of the court." Rule 104(d) of the *Rules of Evidence* states, "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Further, decisions concerning the admissibility of evidence are largely within the trial court's discretion, and we will not disturb those decisions unless they show an abuse of discretion. Syllabus Point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955) ("The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion."); Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

## III.
## ANALYSIS

Rule 404(b) of the *West Virginia Rules of Evidence* says, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith."

The defendant argues that the circuit court erred in permitting the prosecutor to introduce, through M.R.W.'s testimony, evidence pertaining to the defendant's other, extraneous bad acts against M.R.W. in violation of Rule 404(b). The defendant argues that he was entitled to a hearing outside the presence of the jury to

determine the admissibility of the evidence under Syllabus Point 2 of *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[6]  In the alternative, once the evidence was introduced, the defendant asserts that the circuit court, *sua sponte*, should have provided the jury with a curative instruction to limit their use of the evidence.

Before determining that Rule 404(b) applies in this case, we must first determine if the "other bad acts" were intrinsic evidence or extrinsic evidence. *State v.*

---

[6] Syllabus Point 2 of *McGinnis* states:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*LaRock*, 196 W.Va. 294, 312 n. 29, 470 S.E.2d 613, 631 n. 29 (1996). Our review of the record leads us to the conclusion that Rule 404(b) was not implicated by M.R.W.'s testimony. Her testimony to multiple acts of sexual assault during the time periods specified in the indictment was direct evidence intrinsic to the crimes alleged in the indictment, not "other crimes, wrongs, or acts" evidence designed to prove some facet of the defendant's character. Because the evidence was not extrinsic to the crimes charged in the indictment, it was thus admissible without reference to Rule 404(b).

The majority of federal circuits "have held that Rule 404(b) applies only to limits on the admission of other acts extrinsic to the one charged. Under that rule, acts intrinsic to the alleged crime do not fall under Rule 404(b)'s limitations on admissible evidence." *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996). "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock*, 196 W.Va. at 312 n. 29, 470 S.E.2d at 631 n. 29 (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)).

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'" or the "uncharged

offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' (and is thus) part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "(t)here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae." As the Court said in *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977), . . . "(t)he jury is entitled to know the 'setting' of a case. It cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."

*United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (citations omitted). *See also*

Thomas M. DiBiagio, *Intrinsic and Extrinsic Evidence in Federal Criminal Trials: Is the Admission of Collateral Other-Crimes Evidence Disconnected to the Fundamental Right to a Fair Trial*, 47 Syracuse L. Rev. 1229, 1231 (1997) ("Intrinsic evidence is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense."); Jennifer Y. Schuster, Note, *Uncharged Misconduct under Rule 404(b): the Admissibility of Inextricably Intertwined Evidence*, 42 U. Miami L. Rev. 947, 951 (1988) ("After a consideration of the historical development and underlying policies of the general rule excluding evidence of other crimes for the purpose of establishing a defendant's propensity to commit the crime charged, this Comment suggests that evidence of criminal activity committed by the defendant . . . explaining the context of the crime charged, is not the type of evidence contemplated by Rule 404(b), and should

10

therefore be admissible without regard to the limitations of the more stringent admission standards attached to Rule 404(b) evidence.").

This Court has consistently held that evidence which is "intrinsic" to the indicted charge is not governed by Rule 404(b). *See State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 293, 700 S.E.2d 489, 504 (2010) (*per curiam*) (treating as separate evidentiary basis for admission Rule 404(b) and intrinsic evidence); *State v. Biehl*, 224 W.Va. 584, 589, 687 S.E.2d 367, 372 (2009) (*per curiam*) ("Under our jurisprudence, there is a clear distinction between evidence offered as res jestae [sic] of the offense charged and Rule 404(b) evidence."); *State v. Cyrus*, 222 W.Va. 214, 218, 664 S.E.2d 99, 103 (2008) (*per curiam*) ("evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)."); *State v. Woodson*, 222 W.Va. 607, 615-16, 671 S.E.2d 438, 446-47 (2008) (*per curiam*) ("the victim's testimony that Brown offered to sell him drugs was relevant because it was inextricably intertwined with the crimes that occurred immediately thereafter."); *State v. Slaton*, 212 W.Va. 113, 119, 569 S.E.2d 189, 195 (2002) (*per curiam*) ("After considering the testimony at issue, we agree with the circuit court that the evidence was 'intrinsic' to the indicted charge and, therefore, not governed by Rule 404(b).").

As the United States Supreme Court has observed, jurors have certain expectations concerning a party's case and "'[i]f [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party.'" *Old Chief v. United States*, 519 U.S. 172, 188-89 (1997)

11

(*quoting* Stephen A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence*, 66 Calif. L. Rev. 1011, 1019 (1978) (footnotes omitted)).

> People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief*, 519 U.S. at 189. Thus, because "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story," *id.* at 190, "[r]es gestae evidence is vitally important in many trials. It enables the factfinder to see the full picture so that the evidence will not be confusing and prevents gaps in a narrative of occurrences which might induce unwarranted speculation[.]" *United States v. Metz*, 34 M.J. 349, 351 (C.M.A. 1992) (footnote and citation omitted). "[A]dmission of evidence of a criminal defendant's prior bad acts, received to establish the circumstances of the crime on trial by describing its immediate context, has been approved in many other jurisdictions following adoption of the Rules of Evidence." *State v. Agee*, 391 S.E.2d 171, 174 (N.C. 1990).

"[H]istorical evidence of uncharged prior acts which is inextricably intertwined with the charged crime is admissible over a Rule 403 objection." *LaRock*, 196 W. Va. at 313, 470 S.E.2d at 632. *See also United States v. McNair*, 605 F.3d 1152,

1206 (11th Cir. 2010) ("Because the other acts evidence was inextricably intertwined with the charged crimes, it was not excludable under Rule 403."). Or, as we said more directly, "Rule 403 was not intended to prohibit a prosecutor from presenting a full picture of a crime especially where the prior acts have relevance independent of simply proving the factors listed in Rule 404(b)." *LaRock*, 196 W.Va. at 313, 470 S.E.2d at 632. *See also State v. Arceo*, 84 Haw. 1, 928 P.2d 843 (1996) ("The law allows the introduction of evidence for the purpose of showing that there is more than one act upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt.")

In this case, defendant Harris was charged with two counts of first degree sexual assault, with each count alleging that the offense was committed within a two-year period. The victim, M.R.W., could not specify the particular dates of the sexual assaults, but could describe with specificity two of the assaults occurring in two different residences in Hancock County when she was alone with the defendant. But the evidence that the defendant had engaged in additional sexual criminal misconduct with the victim was important in light of two parts of the defendant's defense.

First, the defendant generally asserted that he was not in Hancock County during the times alleged in the indictment. He testified that he was never alone with M.R.W., and denied any sexual misconduct against M.R.W. Second, the defendant's counsel questioned M.R.W. and her sisters regarding various relatives they lived with,

13

and implied that other relatives or their acquaintances might have also committed sexual offenses against M.R.W.

To refute these assertions, the prosecutor – through many witnesses including M.R.W. – established that the defendant was routinely in Hancock County during the times alleged in the indictment. Furthermore, the prosecutor established that the defendant repeatedly was alone with M.R.W. as her babysitter. Finally, M.R.W. testified that she disliked being alone with the defendant, so much so that she would hide under beds, in closets, and under sofas to avoid the defendant. However, she never felt the same fear or an inclination to hide from any other male relative or acquaintance living in her childhood homes. The basis for this fear was shown through the questions disputed by the defendant, which showed that the sexual assaults against M.R.W. occurred on numerous occasions: every time that he babysat her during the times alleged in the indictment.

The evidence challenged by the defendant was intrinsic evidence, inextricably intertwined with the acts charged in the indictment. Accordingly, it did not fall under Rule 404(b)'s limitations on admissible evidence.

## IV.
## CONCLUSION

The defendant's conviction is affirmed.

Affirmed.

14