# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 18-0786** (Berkeley County CC-02-2017-F-231)

**Joshua Shaine Moore,**
**Defendant Below, Petitioner**

**FILED**

**February 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joshua Shaine Moore, by counsel Robert C. Stone, Jr., appeals the final sentencing order entered on August 27, 2018, in the Circuit Court of Berkeley County, following his convictions by a jury of possession with intent to deliver marijuana; transporting a controlled substance in the State, marijuana; and conspiracy to commit possession with intent to deliver, all felonies. The State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 27, 2016, petitioner and his passengers, Abdul Kamara and Shaniqua Whindleton, were traveling north on Interstate 81 in Berkeley County, West Virginia, as West Virginia State Police Trooper D.R. Walker was in his police cruiser monitoring northbound traffic at mile marker 8. Though petitioner's vehicle was not exceeding the speed limit, Trooper Walker observed that, at the speed of seventy miles per hour, it was following too closely to the car in front of it (approximately one-and-a-half car lengths, or twenty to twenty-five feet). According to Trooper Walker, petitioner's vehicle would not have had sufficient time to react to the vehicle in front of it if that vehicle were to suddenly apply its brake. After he was able to safely pull onto the interstate from the median, Trooper Walker initiated a traffic stop of petitioner's vehicle. Petitioner's vehicle exited the interstate and came to a stop in the parking lot of a nearby gas station.

According to Trooper Walker, upon exiting his cruiser, he immediately smelled a strong odor of marijuana, which seemed to emanate from petitioner's vehicle. He approached the vehicle and, when one of the occupants rolled down the passenger side window, smelled an even stronger odor of marijuana. Trooper Walker asked petitioner, who was driving, for his license and

1

registration and, upon learning that the vehicle had been rented, also asked for the rental agreement. While he was filling out the traffic citation, Trooper Walker confronted petitioner about the odor of marijuana and asked him if there were any drugs in the vehicle. Petitioner did not respond. Walker then patted petitioner down, noticed that there were items in his pocket, and inquired about them. Petitioner pulled THC-infused candy out of his pocket.[1]

Based upon the circumstances, Trooper Walker determined that he had probable cause to search petitioner's vehicle. He called another officer to assist him, and, when the other officer arrived, Trooper Walker began searching the vehicle. He found and seized what appeared to be marijuana in sixteen large sealed packages located in pieces of luggage; edibles and other products purporting to contain THC; a loaded, vacuum-sealed .357 magnum handgun; a vacuum sealer; a box of vacuum seal bags; and three cell phones. Trooper Walker also found a copy of petitioner's tax information, which was in the same bag as the gun, and seized $2,883 in cash. Petitioner and his two passengers were arrested.

On December 30, 2016, Walker submitted an affidavit and complaint for a search warrant relating to one of the seized cell phones, a "Samsung Galaxy J1 (IME #99000600033743)." The request for a search warrant was granted.

On August 31, 2017, a Berkeley County Grand Jury indicted petitioner and his passengers on one count of possession with intent to deliver marijuana, *see* W.Va. Code § 60A-4-401(a)(ii), one count of transportation of a controlled substance into the state, *see* W.Va. Code § 60A-4-409(a), and one count of conspiracy to commit possession with intent to deliver marijuana. *See* W.Va. Code § 61-10-31.[2]

On December 29, 2017, petitioner filed a motion in limine regarding the admissibility of the evidence related to the firearm that was found in the trunk of the vehicle. Petitioner argued that because he was not charged with a crime related to the unlawful possession or use of a firearm, evidence related thereto was not relevant and would violate West Virginia Rule of Evidence 404(b).

On June 18, 2018, petitioner filed a motion to suppress the fruits of the vehicle search and any subsequent statements. He argued that the following-too-closely statute upon which Trooper Walker relied to initiate the traffic stop, West Virginia Code § 17C-7-10, was void for vagueness, and that Trooper Walker prolonged a routine traffic stop in order to turn it into a drug investigation, absent reasonable suspicion.[3] Petitioner filed a second motion to suppress on July 19, 2018,

---

[1] "THC" refers to Tetrahydrocannabinol, a Schedule I controlled substance. *See* W. Va. Code § 60A-2-204(d)(32) (2015).

[2] Mr. Kamara was also charged with being a prohibited person in possession of a firearm. *See* W. Va. Code § 61-7-7(a)(8).

[3] Trooper Walker was monitoring a High Intensity Drug Trafficking Area ("HIDTA") as part of a national program focusing on specific drug-heavy areas, including Berkeley County.

2

challenging the validity of the search warrant for his cell phone. He argued that Trooper Walker's affidavit submitted in connection with his request for the warrant did not contain any information providing probable cause to believe that evidence of possession with intent to deliver marijuana would be found on the phone. Following a pretrial hearing, the circuit court denied petitioner's motions by order entered on July 23, 2018.

Petitioner's trial commenced on July 24, 2018. In addition to Trooper Walker, Special Agent Seth Cox of the Bureau of Alcohol, Tobacco, and Firearms, who participated in the investigation of this case, also testified. He testified that, based upon his investigation, the firearm found in petitioner's vehicle was purchased by one of his passengers, Ms. Whindleton, on December 20, 2017, and that video from the establishment where it was purchased showed that petitioner and Mr. Kamara (the other passenger) were with her at the time of purchase, that she and petitioner had looked at various firearms throughout the store, and that petitioner provided her with a large sum of money while she was at the cash register purchasing the firearm.

Rebecca Harrison, a forensic analyst and drug examiner for the West Virginia State Police, also testified. She testified that she tested a representative sample (0.3 grams) from the bags that were seized from petitioner's vehicle, which weighed approximately 11.8 pounds in total. Ms. Harrison testified that, before picking a small sample to test, she made sure that the contents of the bag she selected were "consistent with each other." She confirmed that the substance was marijuana.

At the close of the State's case-in-chief, petitioner moved for a judgment of acquittal. The motion was denied. Petitioner did not testify or present any evidence. The jury ultimately returned guilty verdicts as to all three counts of the indictment. Petitioner subsequently filed a post-trial motion for a judgment of acquittal or new trial. At the August 20, 2018, sentencing hearing, the circuit court denied petitioner's motions and sentenced him to one-to-five years of incarceration on each count, which sentences were ordered to run concurrently. The final sentencing order was entered on August 27, 2018. This appeal followed.

In his first assignment of error, petitioner argues that the circuit court erred in denying his motion for a judgment of acquittal because the State failed to prove an essential element of each of the crimes charged: that petitioner intended to deliver the marijuana that was found in his vehicle.

We review the circuit court's disposition of petitioner's motion for judgment of acquittal de novo, *see State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996), and challenges to the sufficiency of the evidence using a "highly deferential" and "strict" approach that will not lightly overturn a jury's verdict. *See State v. Thompson*, 240 W. Va. 406, 414, 813 S.E.2d 59, 67 (2018).

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable

3

to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995). Furthermore,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part.

The crimes for which petitioner was tried and convicted all required proof that petitioner intended to deliver a controlled substance. *See* W. Va. Code § 60A-4-401(a) (possession with intent to deliver)[4]; W. Va. Code § 60A-4-409 (transporting a controlled substance into the state)[5]; and W. Va. Code § 61-10-31(conspiracy).[6] "Most courts have held that possession with intent to deliver a controlled substance can be proven by establishing a number of circumstances among which are the quantity of the controlled substance possessed and the presence of other paraphernalia customarily used in the packaging and delivery of controlled substances." Syl. Pt. 4, *State v. Drake*, 170 W. Va. 169, 291 S.E.2d 484 (1982). Furthermore,

---

[4] West Virginia Code § 60A-4-401(a) provides that, "[e]xcept as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

[5] West Virginia Code § 60A-4-409(a) provides that "[e]xcept as otherwise authorized by the provisions of this code, it is unlawful for any person to transport or cause to be transported into this state a controlled substance with the intent to deliver the same or with the intent to manufacture a controlled substance."

[6] West Virginia Code § 61-10-31 provides, in relevant part:

It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State or (2) to defraud the State, the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

"[t]he question of whether a person possesses a controlled substance with intent to manufacture or deliver is a jury question to be determined like other questions of intent from all the surrounding facts and circumstances, and as such intent is a basic element of the offense, it must be proven beyond a reasonable doubt." Syllabus Point 3, *State v. Frisby*, 161 W.Va. 734, 245 S.E.2d 622, 624 (1978).

*Drake* at 170, 291 S.E.2d at 485, syl. pt. 5.

The State clearly established a number of circumstances that proved possession with intent to deliver marijuana. Trooper Walker discovered 11.8 pounds of marijuana and other products containing THC that were worth, in total, approximately $53,000. According to Trooper Walker's testimony, this amount of marijuana is not consistent with personal use. Indeed, this Court has stated that "'quantity, standing alone, is evidence of intent to deliver.'" *Id.* at 172, 291 S.E.2d at 487-88 (quoting *State v. Frisby*, 161 W. Va. 734, 737, 245 S.E.2d 622, 624 (1978)). Additionally, the marijuana found in petitioner's vehicle was packaged in individual vacuum-sealed bags, along with a vacuum sealer, additional plastic bags, and $2,882 in cash. Viewing this evidence in the light most favorable to the State, it was more than reasonable for the jury to infer that petitioner possessed the marijuana with the intent to deliver.[7]

As for petitioner's argument that there was no evidence of a conspiracy to possess marijuana with the intent to deliver, we likewise find no error. "In order for the State to prove a conspiracy under *W.Va.Code*, 61–10–31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981). The agreement to commit the offense "may be inferred from the words and

---

[7] To the extent petitioner also argues that the State proved only that 0.3 grams of the items seized from his vehicle were marijuana because that was the only amount tested and that no inference of intent can legitimately be made from this amount, we find no error. Petitioner failed to challenge the manner or method of testing that was performed on the sample of the seized vegetation, including the fact that Ms. Harrison, the drug examiner, made sure that the contents of the bag from which the sample was taken were consistent with each other before she performed the testing. Furthermore, on appeal, petitioner's brief fails to cite to any legal authority in support of his position that, as a matter of law, the testing was insufficient evidence that the seized substance, in its entirety, was marijuana, or that the jury was not permitted to infer the same. We have cautioned that

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, in part, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 122 (2012) (citation omitted).

actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement." *Id.* at 265, 294 S.E.2d at 67.

As outlined above, the evidence was more than sufficient to show an agreement to possess marijuana with the intent to deliver and that an overt act was taken in furtherance of the same. The amount of marijuana seized from petitioner's vehicle, the manner in which it was packaged, and the presence of a vacuum sealer, empty baggies, a large amount of cash, and a vacuum-sealed firearm that was paid for by petitioner are evidence that the jury could reasonably conclude that there existed a conspiracy to possess marijuana with the intent to deliver. Thus, petitioner's assignment of error in this regard is without merit.

In his next assignment of error, petitioner argues that the circuit court erred in denying his motion in limine to prohibit the State from introducing evidence related to the firearm that was found in the trunk of petitioner's vehicle. Petitioner argues that none of the crimes for which he was tried involved the unlawful possession or use of a firearm and that, therefore, evidence relating to the firearm was irrelevant under West Virginia Rule of Evidence 401, violated the balancing test under Rule 403, and constituted evidence of uncharged "other bad acts" under Rule 404(b), which required a *McGinnis*[8] hearing to first determine its admissibility. According to petitioner, he was unfairly prejudiced by the State's repeated mention of the firearm during its opening and closing statements and questioning of witnesses regarding the fact that petitioner paid for his passenger's purchase of the firearm prior to the traffic stop, and that the firearm was loaded, wiped clean, and secured in a vacuum-sealed bag when it was discovered, which, in the witnesses' experience, was unusual and suggested a nefarious purpose, including drug trafficking.[9]

We find no error. "A trial court's ruling on a motion in limine is reviewed on appeal for an abuse of discretion." Syl. Pt. 1, *McKenzie v. Carroll Int'l Corp.*, 216 W. Va. 686, 610 S.E.2d 341 (2004). First, evidence relating to the firearm did not violate Rule 401.[10] The evidence that petitioner was present and paid for the firearm when it was purchased by Ms. Whindleton one week before his arrest and that it was packaged in a manner similar to the 11.8 pounds of marijuana discovered by police was relevant to whether there was a conspiracy to possess the marijuana with the intent to deliver. The circumstances surrounding the purchase of the firearm and its presence in petitioner's vehicle along with the large amount of packaged marijuana, a vacuum sealer, and empty bags, give rise to a reasonable inference of an agreement between petitioner and his passengers to possess marijuana with an intent to deliver, and that an "overt act was taken by a member of the conspiracy to effect the object of that conspiracy." *Less*, 170 W. Va. at 261, 294

---

[8] *See* Syl. Pt. 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

[9] Over petitioner's objection, the circuit court refused to give a cautionary instruction. On appeal, petitioner does not specifically assign the circuit court's refusal to give such an instruction as error.

[10] West Virginia Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

6

S.E.2d at 63, syl. pt. 4, in part. Indeed, as previously noted, the agreement to commit the offense "may be inferred from the words and actions of the conspirators, or other circumstantial evidence . . . ." *Id.* at 265, 294 S.E.2d at 67. Thus, the evidence relating to the firearm did not violate Rule 401.

Likewise, the evidence relating to the firearm did not violate Rule 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rather, the firearm evidence was intrinsic to the crimes charged and not governed by the limitations of Rule 404(b). *See State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013). We have explained that "'[o]ther act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *State v. LaRock,* 196 W. Va. at 312 n.29, 470 S.E.2d at 631 n.29 (quoting *United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990)). *See also Harris*, 230 W. Va. at 721-22, 742 S.E.2d at 137-38. Moreover, "'[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial.' Syl. Pt. 3, *State v. Ferguson,* 165 W.Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa* 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syl. Pt. 7, *State v. Dennis*, 216 W. Va. 331, 607 S.E.2d 437 (2004).

Here, the evidence relating to the firearm was intrinsic to the crimes charged. The evidence relating to the firearm, including the manner in which it was packaged (wiped clean of fingerprints and other DNA) and the opinion of law enforcement witnesses that this suggested a nefarious purpose such as drug trafficking, was evidence "intrinsic to the crimes alleged in the indictment, not 'other crimes, wrongs, or acts' evidence designed to prove some fact of [petitioner's] character." *Harris*, 230 W. Va. at 721, 742 S.E.2d at 137. Indeed, the firearm evidence clearly "'furnishe[d] part of the context of the crime[,]'" was "necessary to a 'full presentation' of the case," was "so intimately connected with and explanatory of the crime charged against [petitioner] and [was] so much a part of the setting of the case and its 'environment' that its proof [was] appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae . . . ."'" *Id.* (quoting *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980)). Thus, the admissibility of the firearm evidence was not governed by Rule 404(b).

Finally, petitioner argues that, even if the firearm evidence did not constitute Rule 404(b) evidence, it was still subject to the Rule 403[11] balancing test because "'[e]vidence of "other crimes, wrongs, or acts," intrinsic or not, may improperly invite the jury to convict a defendant because of other misdeeds, not because of his guilt of the crime charged.'" *State v. Baker*, 230 W. Va. 407, 415, 738 S.E.2d 909, 917 (2013) (quoting *Levya v. State*, 165 P.3d 446, 453 (Wyo. 2007)). Petitioner argues that the State's actions regarding the firearm evidence unfairly prejudiced his

---

[11] West Virginia Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

case because the State excessively employed or "shotgunned" this evidence by devoting excessive trial time to it in its opening and closing statements and in questioning witnesses. *See State v. Thomas*, 157 W. Va. 640, 656, 203 S.E.2d 445, 456 (1974). According to petitioner, "the volume and scope" of the firearm evidence unfairly "compel[led him] to meet charges of which the indictment [gave] him no information; which confuse[d] his strategy of defense; and which raise[d] such a variety of issues that the jury's attention [was] diverted from the charge[s] immediately before it." *Id.*

We conclude that the admission of the firearm evidence did not violate Rule 403. As previously established, the firearm evidence was relevant and intrinsic to the crimes charged because it was intimately connected with and explanatory of the crimes for which petitioner was being tried. The admission of such evidence was highly probative of the crimes charged and did not unfairly prejudice petitioner's defense. Indeed, petitioner admits, and the record reveals, that petitioner repeatedly reminded witnesses (and, thus, the jury) that he had not been charged with a firearm-related offense, thereby eliminating any potential confusion of the issues or misleading of the jury.

We next address petitioner's assignment of error that the circuit court erred in failing to instruct the jury that simple possession of marijuana, a misdemeanor, *see* W.Va. Code § 60A-4-401(c),[12] was a lesser-included offense of count 2 of the indictment – that is, transportation of a controlled substance into the State. Petitioner argues that, based upon the evidence presented, it would have been impossible for him to have transported the marijuana into West Virginia without first possessing it and that, therefore, simple possession is a lesser-included offense of transporting a controlled substance into the State. Accordingly, he argues, the circuit court's failure to give the lesser-included offense instruction offered by petitioner was reversible error.

This Court has held that "'[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*.' Syl. pt. 1, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996)." Syl. Pt. 1, *State v. Shingleton,* 222 W. Va. 647, 671 S.E.2d 478 (2008).

We find no error. Petitioner's argument misapprehends the test for determining whether a particular offense constitutes a lesser-included offense of a greater offense. As we explained in syllabus point 4 of *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002):

---

[12] West Virginia Code § 60A-4-401(c) states, in pertinent part:

It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection is guilty of a misdemeanor . . . .

"'"'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981) [,*overruled on other grounds, State v. Jenkins,* 191 W.Va. 87, 443 S.E.2d 244 (1994) ]." Syllabus Point 1, *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).' Syl. Pt. 5, *State v. Wright,* 200 W.Va. 549, 490 S.E.2d 636 (1997)."

West Virginia Code § 60A-4-401(c), the simple possession statute, does not meet this test because it is not impossible to commit the greater offense of transporting a controlled substance in to the State, West Virginia Code § 60A-4-409(a), without first having committed the lesser offense of simple possession. West Virginia Code § 60A-4-409(a) provides, in pertinent part, that "it is unlawful for any person to transport or cause to be transported into this state a controlled substance with the intent to deliver the same . . . ." Thus, it is not necessary to possess a controlled substance to "cause [it] to be transported into this state." *Id.* Put another way, it is possible "to transport *or cause to be transported* into this state a controlled substance with the intent to deliver the same," in violation of West Virginia Code § 60A-4-409(a), without also simply "possess[ing] a controlled substance," in violation of West Virginia Code § 60A-4-401(c). Petitioner's argument that, based upon the evidence of his particular case, it would have been impossible for him to have transported the marijuana into West Virginia without first possessing it clearly misapprehends the law, as courts in this jurisdiction do not consider each case "individually to determine whether the evidence adduced at trial supports a lesser included instruction." *State v. Wilkerson*, 230 W.Va. 366, 370, 738 S.E.2d 32, 36 (2013).[13] Based upon the foregoing, we do not find that the circuit

[13] The amended version of West Virginia Code § 60A-4-409 (transporting a controlled substance into the State) became effective on July 7, 2017, after the crimes herein occurred. The amended version states that "it is unlawful for any person to transport *or cause to be transported* into this state a controlled substance with the intent to deliver the same . . . ." (Emphasis added). On appeal, petitioner contends that he was entitled to be tried under the prior version of the statute, which provided that "it shall be unlawful for any person to transport into this State a controlled substance with the intent to deliver the same," West Virginia Code § 60A-4-409 (2005), and which did not include the "or cause to be transported" language. According to petitioner, under the prior version of the statute, simple possession would have been a lesser-included offense of transporting a controlled substance into the State, which would have required that the circuit court give petitioner's proffered lesser-included offense instruction.

We find no error. The record reveals that petitioner acquiesced to the application of the amended version of West Virginia Code § 60A-4-409(a) to his case. During the discussion of jury instructions, petitioner's counsel specifically referenced the current statutory language, arguing that "there's no evidence of arranging or causing to be transported into the State. The evidence is [petitioner] was driving a car[,]" and that the State "ha[s] offered no evidence that [petitioner] caused [the marijuana] to be transported." The record further reveals that petitioner specifically referenced the language of the amended version of the statute in his proposed lesser-included offense instruction and, thus, failed to argue that it did not apply. "'A judgment will not be reversed

9

court abused its discretion in refusing to give the proffered instruction.

Next, petitioner argues that the circuit court erred in failing to grant his motion to suppress the search warrant for the Samsung Galaxy J1 smartphone that was seized during the traffic stop. Petitioner argues that the "Affidavit and Complaint for Search Warrant" for the phone that was completed by Trooper Walker and submitted to the magistrate court failed to set forth probable cause to believe that evidence of a crime would be found on the phone. Further, he argues, Walker's narrative that was submitted in support of the affidavit and complaint (denoted as "Attachment A") failed to include any information regarding the seized phone. Therefore, petitioner argues, the search warrant for the phone should have been suppressed.[14] We find no error.

Regarding the circuit court's denial of petitioner's motion to suppress the search warrant for his cell phone, we have held:

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

---

for any error in the record introduced by or invited by the party seeking reversal.' Syllabus point 4, *State v. Mann*, 205 W.Va. 303, 518 S.E.2d 60 (1999)." Syl. Pt. 7, *State v. Hughes*, 225 W. Va. 218, 691 S.E.2d 813 (2010). Furthermore, "'"'[i]n the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.' Syllabus Point 1, *Mowery v. Hitt*, 155 W.Va. 103[, 181 S.E.2d 334] (1971)." Syl. pt. 1, *Shackleford v. Catlett*, 161 W.Va. 568, 244 S.E.2d 327 (1978).' Syl. Pt. 3, *Voelker v. Frederick Business Properties Co.*, 195 W.Va. 246, 465 S.E.2d 246 (1995)." Syl. Pt. 5, *State v. Day*, 225 W. Va. 794, 696 S.E.2d 310 (2010).

[14] Trooper Walker testified regarding text messages that were extracted from the cell phone at issue:

> Generally there's some conversation there of what appeared to be drug sales. Also photographs of large marijuana grow, what appeared to be a marijuana grow. And also shipping labels to several location[s] over to the Richmond area right after the pictures of the marijuana grow, or what appear to be the marijuana grow.

> . . . .

> Four of the shipping labels that were photographed were to Ms. Whindleton [one of petitioner's passengers]. The return address on the shipping labels appeared to be fake.

In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

Syl. Pts. 1 and 2, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). Furthermore,

after-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

*State v. Payne*, 239 W. Va. 247, 261, 800 S.E.2d 833, 847 (2016) (internal citations omitted). Finally, this Court has explained that

[p]robable cause for the issuance of a search warrant exists if the facts and circumstances provided to a magistrate in a written affidavit are sufficient to warrant the belief of a prudent person of reasonable caution that a crime has been committed and that the specific fruits, instrumentalities, or contraband from that crime presently may be found at a specific location. It is not enough that a magistrate believes a crime has been committed. The magistrate also must have a reasonable belief that the place or person to be searched will yield certain specific classes of items. There must be a nexus between the criminal activity and the place or person searched and thing seized. The probable cause determination does not depend solely upon individual facts; rather, it depends on the cumulative effect of the facts in the totality of circumstances.

Syl. Pt. 3, *State v. Lilly*, 194 W. Va. 595, 461 S.E.2d 101 (1995).

We find no error. In Attachment A to the affidavit and complaint, Trooper Walker included a detailed summary of the traffic stop, the circumstances that precipitated a search of petitioner's vehicle, and the seizure of the three cell phones, along with the vacuum-sealed bags of suspected marijuana, suspected THC candy, a vacuum-sealed loaded firearm, a large sum of cash, and three large locked boxes. Attachment A also included the fact that petitioner had been placed into custody on the charges for which he was ultimately indicted and requested that a search warrant be issued for the "above mentioned cell phone in order to continue this investigation." The "above referenced cell phone" was identified in the affidavit and complaint as a "Samsung Galaxy J1 (IME #99000600033743)." Given these facts, petitioner's argument that Attachment A

11

"contain[ed] no information regarding where [the] Samsung Galaxy J1 was located nor does it tie the phone to the traffic stop" is disingenuous and unavailing. Indeed, it was highly reasonable for the magistrate court to infer that the Samsung Galaxy J1 cell phone identified in the affidavit and complaint for a search warrant was one of the cell phones seized as a result of petitioner's arrest. Furthermore, the totality of the circumstances as set forth in Trooper Walker's written narrative established a nexus between the seized cell phone and the suspected criminal activity (particularly, the offenses of possession with intent to deliver and conspiracy), "was sufficient to warrant the belief of a prudent person of reasonable caution that a crime ha[d] been committed" and that evidence of the same might be found on the phone. *See Lilly*, 194 W. Va. at 598, 461 S.E.2d at 104, syl. pt. 3.

In his final assignment of error, petitioner argues that the circuit court erred in failing to grant his motion to suppress all of the evidence seized as a result of the traffic stop. He contends that the purported reason for initiating the stop of petitioner's vehicle (that petitioner's vehicle was following too closely to the vehicle in front of it) and the subsequent reason for searching the vehicle after it was stopped (that Trooper Walker smelled the odor of marijuana as he approached petitioner's vehicle) were not credible. Petitioner argues that the initial stop of petitioner's vehicle was based upon Walker's subjective (and uncorroborated) observation that petitioner's vehicle was violating the following-too-closely statute, that the statute does not contain objective standards with regard to the distance a vehicle must maintain behind the vehicle driving in front of it, and that, consequently, the statute is void because it is unconstitutionally vague and subject to abuse in its application with regard to justifying a traffic stop. According to petitioner, Trooper Walker, who was on a drug interdiction patrol when he stopped petitioner's vehicle, detained petitioner longer than was necessary in order to embark upon "an unwarranted investigation into drug trafficking that was not supported by reasonable suspicion." *U.S. v. Digiovanni*, 650 F.3d 498, 505 (4th Cir. 2011). Accordingly, petitioner argues, any evidence seized as a result of the traffic stop and any statements thereafter obtained were fruit of the poisonous tree and should have been suppressed prior to trial. *See* Syl. Pt. 1, *State v. Davis*, 170 W. Va. 376, 294 S.E.2d 179 (1982) ("The general rule is that where there is an illegal seizure of property, such property cannot be introduced into evidence, and testimony may not be given in regard to the fact surrounding the seizure of the property.").

We first address whether the following-too-closely statute is so unconstitutionally vague so as to be void. We review constitutional challenges relating to a statute de novo. *See State of West Virginia ex rel. Citizens Action Group v. W. Va. Econ. Dev. Grant Comm.*, 213 W. Va. 255, 261-262, 580 S.E.2d 869, 875-876 (2003). Further, we have observed that "[t]he void for vagueness doctrine is an aspect of the due process requirement that statutes set forth impermissible conduct with sufficient clarity that a person of ordinary intelligence knows what conduct is prohibited and the penalty if he transgresses these limitations." *State ex rel. Appleby v. Recht,* 213 W. Va. 503, 518, 583 S.E.2d 800, 815 (2002). However, "'[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment.' Point 3 Syllabus, *Willis v. O'Brien*, 151 W. Va. 628[, 153 S.E.2d 178]." Syl. Pt. 4, *State v. Flinn*, 158 W. Va. 111, 208 S.E.2d 538 (1974). *See also* Syl. Pt. 4, in part, *State v. James,* 227 W. Va. 407, 710 S.E.2d 98 (2011) ("In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the

principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. . . . The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.")

West Virginia Code § 17C-7-10(a), our following-too-closely statute, states that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Petitioner argues that the "reasonable and prudent" standard set forth in the statute is unconstitutionally vague because it does not contain any specific minimum distance requirement and is so subjective in nature that a person of ordinary intelligence cannot know what conduct is prohibited. *See Appleby*, 213 W. Va. at 518, 583 S.E.2d at 815.

We find no error. A number of courts in other jurisdictions have upheld the "reasonable and prudent" standard in following-too-closely statutes that are identical or similar to ours, finding that it provides sufficient notice to drivers as to what type of driving conduct is prohibited. *See e.g.*, *United States v. Hunter*, 663 F.3d 1136 (10th Cir. 2011); *United States v. Near*, 2019 WL 2435683 (N.D.Okla. June 11, 2019); *United States v. Mendez-Cejas*, 2009 WL 914873 (D.Nev. Jan. 15, 2009); *United States v. Marmolejo*, 2007 WL 915195 (S.D.Ohio Mar. 26, 2007); *State v. Harper*, 415 P.3d 948 (Idaho Ct.App. Feb. 26, 2018); and *State v. Chavez*, 427 P.3d 126 (N.M.Ct. App. July 17, 2013). As the Court of Appeals of Idaho explained in *Harper*,

> [t]he statute provides notice to all drivers that following too closely is prohibited. What constitutes following too closely is dependent upon a variety of factors, including but not limited to weather, lighting, and road conditions. That the statute leaves to a driver to determine what constitutes a reasonable and prudent distance to follow another vehicle does not make the statute inherently vague. This flexibility is intentionally built into the statute so drivers can assess all the factors in determining how best to avoid the dangerous consequences of following a vehicle too closely. The prohibition of following too closely does not need to be reduced to an exact mathematical equation, factoring in speed, distance, car size, etc. in order to provide notice to a driver of ordinary intelligence how close is too close when following another vehicle. Indeed, to do so would inevitably fail to adequately address at least one of the many variables that change depending on the conditions. It is clear that what is a safe distance to follow on a well-lit, dry road on a July afternoon may be vastly different than what is a safe and prudent distance on that same road in January at 7:00 p.m. after a snow storm. A driver is expected to use reasonable common sense when assessing the road conditions and adjusting his or her driving patterns accordingly.

415 P.3d at 952-53. *See also Hunter*, 663 F.3d at 1142 (stating that "imprecision in statutes such as the one here simply build in needed flexibility while incorporating a comprehensible, normative standard easily understood by the ordinary driver, and giving fair warning as to what conduct on his or her part is prohibited. Further, references in these statutes to considerations such as speed,

traffic and road conditions, channel enforcement" (footnote omitted)). In contrast, petitioner has failed to identify a single case in any jurisdiction that has invalidated a similar following-too-closely statute on the ground that the "reasonable and prudent" standard is unconstitutionally vague. Because we find the reasoning of the cases cited above to be compelling, we find no merit in petitioner's argument that West Virginia Code § 17C-7-10(a) is unconstitutionally vague and, therefore, void.

Likewise, we find no merit in petitioner's argument that West Virginia Code § 17C-7-10's "reasonable and prudent" standard is subject to abuse in its application by law enforcement with regard to justifying a traffic stop. Having already established that the "reasonable and prudent" standard provides adequate notice to drivers as to what type of driving behavior is prohibited, we also find that the statute similarly provides sufficient guidelines for its enforcement. As stated in *Harper*,

> the statute instructs officers to make judgments according to the statute's reasonable and prudent standard, just as drivers. To guide that judgment, the statute includes situations that might call for a driver to increase his following distance: speed of his vehicle, how much traffic is on the road, or the condition of the highway itself.

415 P.3d at 953. Thus, just as West Virginia Code § 17C-7-10(a) provides drivers with adequate notice of prohibited driving conduct, it also appropriately guides the discretion and judgment of the officers who enforce it. *See Harper*, 415 P.3d at 953.

Finally, to the extent petitioner argues that Trooper Walker detained petitioner longer than was necessary in order to investigate him for drug trafficking without reasonable suspicion, we likewise find no error. In his motion to suppress, petitioner argued that it would have been impossible for Trooper Walker to smell the marijuana as he approached the vehicle and when petitioner's passenger rolled down the window because the marijuana was in vacuum-sealed, non-permeable plastic baggies. However, the circuit court found Walker's testimony that he smelled the odor of marijuana to be "credible and reasonable under the circumstances."

We have held that, "[o]n appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart,* 192 W. Va. 428, 452 S.E.2d 886 (1994). Further,

> "[a]n automobile may be stopped for some legitimate state interest. Once [a] vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made."

14

Syl. Pt. 4, *State v. Moore,* 165 W. Va. 837, 272 S.E.2d 804 (1980), *overruled on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991).[15] As already established, the traffic stop of petitioner's vehicle was legitimate, as we have determined that Trooper Walker properly stopped petitioner's vehicle for following too closely to the vehicle in front of it, in violation of West Virginia Code § 17C-7-10(a). As to whether Walker had probable cause to believe the vehicle was carrying contraband or evidence of a crime, the circuit court's finding regarding the credibility of Walker's testimony that he smelled the odor of marijuana coming from and in petitioner's vehicle is given great deference, as petitioner has failed to show that such finding was clearly wrong. Accordingly, we conclude that petitioner has failed to show that the circuit court erred in denying petitioner's motion to suppress all of the evidence seized as a result of the traffic stop on the ground that Trooper Walker unlawfully prolonged the traffic stop

 For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 3, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[15] Petitioner does not claim that exigent circumstances did not exist in this case.

15