**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**February 19, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0960** (Jefferson County CC-19-2019-F-31)

**Shannon Brooke Mills,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Shannon Brooke Mills, by counsel Stephanie E. Scales-Sherrin, appeals the Circuit Court of Jefferson County's September 17, 2019, order sentencing her to life in prison, with mercy, following her conviction for first-degree murder. Respondent State of West Virginia, by counsel Holly M. Flanigan, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and Mark W. Carter Jr. stole drugs from Christina Crawford at Ms. Crawford's home on August 15, 2018. After doing so, Mr. Carter got into the driver's seat of Benjamin DeVoe's truck, petitioner entered the passenger side, and Mr. DeVoe was in the truck's bed. Seeking to prevent their getaway, Ms. Crawford latched onto the front passenger door before petitioner could shut it. Mr. Carter sped away and took a sharp turn, throwing Ms. Crawford from the truck and causing her to strike her head on the pavement. Mr. Carter and petitioner continued their escape, without stopping to check on or render aid to Ms. Crawford. Fifteen days later, Ms. Crawford died from a brain injury sustained in this incident.

Petitioner and Mr. Carter were indicted on January 16, 2019, on one count each of first-degree murder, first-degree robbery, and felony conspiracy.[1] On March 8, 2019, the State moved

---

[1] Mr. Carter was also indicted on one count of leaving the scene of an accident involving death.

1

for a pretrial ruling on the admissibility of certain evidence. The State asserted that petitioner and Mr. Carter had made two unsuccessful attempts to steal drugs before ultimately succeeding in stealing drugs from Ms. Crawford. The State argued that petitioner's and Mr. Carter's statements and actions in attempting to steal drugs before meeting up with Ms. Crawford were connected to the crimes charged in the indictment and were intrinsic, rather than extrinsic, evidence. The State also argued that the acts and statements constituted substantive evidence of the formation of the conspiracy with which petitioner and Mr. Carter were charged. Petitioner countered that the acts should not be considered intrinsic evidence because they "occurred several hours prior to the incident that resulted" in Ms. Crawford's death, and she urged the court to deem them extrinsic and follow the necessary procedures for admitting the evidence under Rule 404(b).

Although petitioner failed to include in the appendix record either the circuit court's order on this motion or a transcript of any hearing held on the motion, it appears that the court granted the State's motion because at trial, which began on July 10, 2019,[2] Mr. DeVoe testified to picking up petitioner's cousin, Stacy Mills, and Mr. Carter at petitioner's request. Ms. Mills and Mr. Carter rode in the back of Mr. DeVoe's truck, and Mr. DeVoe recounted that "[t]hey argued incessantly" and that Ms. Mills "was incredibly upset with him because he apparently shot the heroin they actually had all to himself. He hadn't shared." The four returned to Mr. DeVoe's hotel room, Mr. Carter and Ms. Mills showered, and then the four departed again. Mr. DeVoe drove, but he was unaware of the intended destination or purpose other than to say, "I just knew they were out on a hunt" for MDMA.[3] Mr. Carter directed Mr. DeVoe to travel to a home; Mr. DeVoe let Mr. Carter "out so that he could go into a residence that, I don't know, had drugs or something or he was going to rob them in some way," but "apparently something went wrong and [Mr. Carter] needed to get back in the truck." Mr. DeVoe testified that he was then told to drive to a 7-Eleven.

At the 7-Eleven, Mr. Carter directed Mr. DeVoe to park his truck so that it faced the road. Mr. DeVoe learned that there was a woman who "was dealing [MDMA] out of the back of the 7-Eleven," and petitioner and Mr. Carter exited the truck. Petitioner and Mr. Carter were gone for approximately ten minutes before quickly getting back into the truck. Mr. Carter said, "Go, go, go." In the truck, petitioner and Mr. Carter went "back and forth" about how they were going "to grab what she had," and if the alleged dealer fought back, petitioner planned to "knock the shit out of her and take her shit." Mr. DeVoe explained that petitioner made this comment "as in retrospect she was going to [strike the alleged dealer and take the drugs,] but what had [actually] happened [petitioner and Mr. Carter] further related was that [their target] apparently had made it into the 7-Eleven."

---

[2] Petitioner's trial was bifurcated into guilt and mercy phases. Additionally, petitioner and Mr. Carter were granted separate trials.

[3] MDMA is "a synthetic drug that alters mood and perception (awareness of surrounding objects and conditions). It is chemically similar to both stimulants and hallucinogens, producing feelings of increased energy, pleasure, emotional warmth, and distorted sensory and time perception." National Institute on Drug Abuse, http://drugabuse.gov/publications/drugfacts/mdma-ecstasymolly. MDMA is commonly known as "ecstasy" or "molly." *Id.*

Mr. DeVoe testified that, after that attempted robbery, he "just wanted to go back to [his] room," but they did not make it back to the hotel because Mr. Carter "had apparently called or gotten in contact with" Ms. Crawford, who reportedly "had a roommate that was a [MDMA] dealer." Mr. DeVoe explained that he went along with these continued efforts to obtain MDMA because he was interested in petitioner romantically; he hoped that "giving her what she wanted" would cause the day to "go better or smoother." Mr. DeVoe dropped Ms. Mills off on the way to meet Ms. Crawford, and he testified that "this is where it got really confusing because originally [Mr. Carter] had said that [Ms. Crawford] was going to front him the two grams of [MDMA] or he was going to ask and he was pretty sure she would do it," and that "was the whole reason [Mr. DeVoe] had originally gone in the first place . . . because if you're fronting something, you are doing it on good will." But then, if that plan did not work, petitioner and Mr. Carter told Mr. DeVoe to pretend that he was petitioner's husband who "make[s] a lot of money," "want[s] to relax on the weekends," and "wanted some [MDMA] so we could have some fun."

The group met up with Ms. Crawford, who was accompanied by several friends, and they all traveled to Ms. Crawford's home so that petitioner could sample the drugs. When they arrived at the home, petitioner entered the home, and Mr. Carter remained outside with Mr. DeVoe. Mr. Carter explained to Mr. DeVoe that if petitioner "got the opportunity she was going to grab the drugs, . . . run out of the house as fast as she can, get into the passenger seat, and we were to leave as quickly as possible." While waiting outside, Mr. Carter placed a large rock in front of the tire of one of Ms. Crawford's friend's cars to slow Ms. Crawford and her friends down should petitioner succeed and a pursuit ensue.

Petitioner exited the house, and Ms. Crawford and others followed. Ms. Crawford "explained that the drugs had gone missing" and she wanted the drugs returned or to be paid for them. Mr. Carter entered the driver's seat of Mr. DeVoe's truck, and Mr. DeVoe got in to the truck bed. Petitioner entered the passenger side and said, "Go, go, go." Mr. Carter "pull[ed] back out as quickly as possible," and Ms. Crawford, who was standing in front of the open passenger door, grabbed the passenger door. Mr. Carter continued driving while Ms. Crawford was hanging onto the truck "[f]or dear life." During this time, Mr. Carter was "shouting, yelling," and otherwise "panicked." Mr. DeVoe was "screaming obscenities, trying to influence [Mr. Carter] in some way, shape or form to stop." Mr. Carter "swerve[d] back and forth on the road," hit a mailbox "at some point," and then "[t]here was a bump." "The next thing" Mr. DeVoe knows, "[Ms. Crawford's] not there anymore and [Mr. Carter] says, 'Oh my God, I think I ran over her.'" Mr. Carter continued driving, picked up Ms. Mills, and then drove to a skate park where petitioner and Mr. Carter split the stolen drugs. Petitioner, Mr. Carter, and Ms. Mills "took off into the woods," and Mr. DeVoe drove his truck back to his hotel room.

On cross-examination, petitioner questioned Mr. DeVoe extensively and almost exclusively on purported inconsistencies between the testimony he gave at trial, the statement he gave to the police, and the testimony he gave at prior proceedings. For instance, Mr. DeVoe did not inform the investigating officer that Mr. Carter and Ms. Mills argued over drugs after Mr. DeVoe picked them up or that petitioner and Mr. Carter devised a plan involving Mr. DeVoe pretending to be petitioner's husband. In an earlier proceeding, Mr. DeVoe testified that they went to the 7-Eleven before the attempted robbery at the residence, rather than the residence before the store; that they may have, in fact, gone to the 7-Eleven twice that day, rather than just once; and

3

that, as they were leaving the 7-Eleven, petitioner reportedly voiced a different expletive-laden statement than the one to which Mr. DeVoe testified.

In addition to Mr. DeVoe, several other witnesses testified on the State's behalf, and petitioner was ultimately found guilty of first-degree murder under a felony murder theory, with first-degree robbery serving as the predicate felony.[4] On appeal, petitioner does not challenge the sufficiency of the evidence to support her conviction; accordingly, it is not necessary to recount the other witnesses' testimony extensively. Instead, petitioner's challenge on appeal relating to the testimony offered at trial concerns purported inconsistencies in the witnesses' testimonies. For example, Jennifer Jenkins, who shared a home with Ms. Crawford and witnessed her clinging to the truck as petitioner and Mr. Carter made their getaway, got into her own vehicle to pursue the truck. Ms. Jenkins testified that she saw petitioner "pushing and punching" Ms. Crawford "to get her off of the vehicle." Caylin Valentine, who was also at Ms. Crawford's home and pursued the truck separately in his own vehicle, testified to seeing petitioner kick Ms. Crawford. Mr. DeVoe, however, testified that he did not see petitioner strike Ms. Crawford.

For another example, Ms. Jenkins informed the investigating officer that Ms. Crawford was thrown from the vehicle before she had caught up to the intersection at which that occurred; however, at petitioner's trial, Ms. Jenkins testified that she saw Ms. Crawford being thrown from the vehicle. Ms. Jenkins also testified that, after Ms. Crawford was thrown from the truck, she held Ms. Crawford's head and hand. This testimony differed from the investigating officer's testimony in that he testified that he observed a male holding Ms. Crawford's head. Petitioner vigorously cross-examined the State's witnesses on variances in their testimony.

Following trial, petitioner moved for a new trial on August 2, 2019. Petitioner argued that the State's evidence "did not establish that [she] committed any of the crimes for which she was convicted," and that she

> attempt[ed] to present a defense at the trial, which included a numerous amount of testimonies from the State's and [d]efendant's witnesses, which were not consistent with one another as to the facts surrounding the alleged incident, to wit: whether or not all parties were using illegal substances and were under the influence at the time of the incident; how close vehicles traveled behind [Mr. DeVoe's] truck; who was at the scene of the alleged incident first; whether or not the [d]efendant was pushing, kicking or pulling the alleged victim into the car; and where the alleged victim was located once the truck was moving.

On that same date, petitioner also filed a renewed motion for judgment of acquittal. Petitioner argued that the State failed to present sufficient evidence that she "actually committed all the elements necessary to establish convictions for" first-degree murder, and she repeated the

---

[4] Petitioner was acquitted of felony conspiracy. Further, the jury recommended that mercy be attached to its verdict on first-degree murder.

4

argument recounted above concerning alleged inconsistent testimony.[5] The court denied petitioner's motions on August 13, 2019.

At petitioner's September 16, 2019, sentencing hearing, the court imposed a life sentence, with mercy. The court entered its sentencing order on September 17, 2019, and this appeal followed.[6]

Petitioner raises two assignments of error on appeal. In her first, she argues that the circuit court erred in deeming evidence of her earlier failed robbery attempts intrinsic to the crimes charged. Petitioner states that the court, in making this purportedly erroneous determination, relied on evidence presented at Mr. Carter's trial, though the evidence concerning Mr. Carter was different from that relevant to petitioner. For instance, the evidence was that only Mr. Carter exited the car at the house during the earlier attempt. Additionally, petitioner notes that the prior bad acts occurred several hours prior to the incident at Ms. Crawford's home. The court's erroneous finding that the evidence was intrinsic, petitioner argues, further resulted in the court erroneously failing to determine the evidence's admissibility under Rule 404(b) of the West Virginia Rules of Evidence, as outlined in Syllabus Point 2 of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

"A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 3, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013) (citation omitted).

"'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Id.* at 721, 742 S.E.2d at 137 (citation omitted). "If the proffer fits in to the 'intrinsic' category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment." *State v. Dennis*, 216 W. Va. 331, 351, 607 S.E.2d 437, 457 (2004).

We find no error in the circuit court's determination that the challenged evidence was intrinsic to the crimes charged. Petitioner's and Mr. Carter's initial unsuccessful attempts to steal drugs prompted their decision to make Ms. Crawford their next target. The conduct testified to by Mr. DeVoe, therefore, provided context for the charged conduct, and the acts were part of a single criminal episode. "[A]dmission of evidence of a criminal defendant's prior bad acts, received to establish the circumstances of the crime on trial by describing its immediate context, has been approved in many other jurisdictions following adoption of the Rules of Evidence." *Harris*, 230 W. Va. at 723, 742 S.E.2d at 139 (citation omitted). We have also recognized that "[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of

---

[5] The entirety of petitioner's argument in her post-trial motions regarding the alleged inconsistent testimony is recounted above. Petitioner offered no analysis or citation to legal precedent to support her claim.

[6] This Court affirmed Mr. Carter's convictions and sentence in *State v. Carter*, No. 19-0501, 2020 WL 2735453 (W. Va. May 26, 2020)(memorandum decision).

transactions being investigated are generally considered *res gestae* and admissible at trial." *Dennis*, 216 W. Va. at 335, 607 S.E.2 at 441, syl. pt. 7 (citation omitted). Because the evidence was intrinsic to the crime charged, Rule 404(b) of the West Virginia Rules of Evidence is not implicated. *Harris*, 230 W. Va. at 722, 742 S.E.2d at 138 ("[E]vidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b).") (citation omitted).

Moreover, the challenged evidence directly supported petitioner's conspiracy charge. "It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State . . . if . . . one or more of such persons does any act to effect the object of the conspiracy." W. Va. Code § 61-10-31. Because only one member of a conspiracy needs to take an overt act toward effecting the object of the conspiracy, it matters not that petitioner remained in the car while Mr. Carter exited the car at the house they intended to rob. *See* syl. pt. 5, *State v. Minigh*, 224 W. Va. 112, 680 S.E.2d 127 (2009) ("In order for the State to prove a conspiracy . . . , it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of the conspiracy.") (citation omitted).

In petitioner's second assignment of error, she argues that the court erred in failing to grant her motion for judgment of acquittal and motion for a new trial in light of the "false and inconsistent statements of the State's witnesses, when the State knowingly allowed said witnesses to present false testimony." Petitioner points to Mr. DeVoe's "ever-changing theory of events." Petitioner also states that Mr. DeVoe admitted at trial that he previously lied to law enforcement, which put the State on notice of his propensity for lying.

In further support of this assignment of error, petitioner points to the alleged inconsistencies in testimony from Ms. Jenkins and Mr. Valentine, claiming that the State knew they would "continue their false testimony . . . due to their previous false testimony at Mr. Carter's trial and [their] . . . multiple interviews with prosecutors and inconsistent statements to law enforcement." Petitioner concludes that it "cannot be disputed" that this evidence "materially affected the verdict," which entitles her to a new trial.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000) (citations omitted).

In petitioner's post-trial motions, she argued before the circuit court that "the evidence offered by the State did not establish that [she] committed any of the crimes for which she was convicted," that she should have been acquitted of all charges, and that she "attempt[ed] to present a defense at the trial, which included a numerous amount of testimonies from the State's and [petitioner's] witnesses, which were not consistent with one another as to the facts surrounding the alleged incident." Petitioner did not assert that the State knowingly presented false testimony, let

6

alone present evidence or argument in support of such an assertion.[7] Petitioner first raises that claim before this Court. As we have repeatedly reminded litigants, "[t]his Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered [for] the first time on appeal." *State v. Jessie*, 225 W. Va. 21, 27, 689 S.E.2d 21, 27 (2009) (citation omitted); *see also id.* at 24, 689 S.E.2d at 24, syl. pt. 3 ("As a general matter, a defendant may not assign as error, for the first time on direct appeal, an issue that could have been presented initially for review by the trial court on a post-trial motion.") (citation omitted). Even if we were to disregard our general rule, however, petitioner has failed to demonstrate that the State knowingly presented false testimony. "Inconsistencies between a witness's trial testimony and their previous statements, or between the testimonies of multiple witnesses, do not necessarily demonstrate falsity." *Flack v. Ballard*, 239 W. Va. 566, 581, 803 S.E.2d 536, 551 (2017). Rather, "[i]t [is] the role of the jury to weigh the evidence and make credibility assessments after it observed the witnesses and heard their testimony." *Id.* (citation omitted). Petitioner highlighted the purported inconsistencies at trial, and the jury weighed the evidence and assessed the witnesses' credibility. We will not disturb the jury's determinations on appeal. Accordingly, petitioner has failed to demonstrate error in the court's denial of her post-trial motions.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 19, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton

---

[7] In order to obtain a new trial on a claim that the prosecutor presented false testimony at trial, a defendant must demonstrate that (1) the prosecutor presented false testimony, (2) the prosecutor knew or should have known the testimony was false, and (3) the false testimony had a material effect on the jury verdict.

Syl. Pt. 2, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).