# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0656** (Marion County CC-24-2019-F-48)

**James Ryan Vincent,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner James Ryan Vincent appeals the order of the Circuit Court of Marion County, entered on July 27, 2021, sentencing him to consecutive terms of imprisonment: for life, with mercy, upon his conviction of first-degree murder; one to five years upon his conviction of conspiracy to commit a felony; and two to five years upon his conviction of malicious assault.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21. Mr. Vincent's appeal centers on an evidentiary ruling of the circuit court, and we recognize that the West Virginia Rules of Evidence "allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).

Mr. Vincent, a former president of a local chapter of The Pagan Motorcycle Club ("the Pagans" or "the club"), was tried by a jury and sentenced as described above for the death of Luka Grabb. Prior to trial, Mr. Vincent filed a "Motion in Limine to Exclude Gang Related Evidence," specifically seeking to exclude evidence of his affiliation with the Pagans or any other "biker gang." The circuit court conducted a hearing on the motion and ultimately concluded that evidence of Mr. Vincent's affiliation with the Pagans was intrinsic to the circumstances of Mr. Grabb's murder. It, consequently, denied Mr. Vincent's motion.

On appeal, Mr. Vincent argues that the court's ruling ran afoul of the West Virginia Rules of Evidence because evidence of his club affiliation was: (1) inadmissible under Rule 404(b); (2) inadmissible under Rule 401; and (3) more prejudicial than probative under Rule 403. Though Mr. Vincent presents these arguments in three separate assignments of error, each describes a distinct

---

[1] Petitioner appears by counsel Thomas G. Dyer, Mary Guy Dyer, and Zachary S. Dyer. Respondent appears by counsel Patrick Morrisey and Andrea R. Nease Proper.

1

step in the evaluation a circuit court must conduct in response to an offer of evidence under Rule 404(b) of the West Virginia Rules of Evidence.[2] The crux of Mr. Vincent's assignments of error is that the circuit court improperly admitted "prior bad acts" evidence that should have been excluded under Rule 404(b). That rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith[.]" However, "[t]his Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)." *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) (citations omitted).

We find that the circuit court did not abuse its discretion in categorizing the evidence of Mr. Vincent's club affiliation as intrinsic and, accordingly, declining to exclude it under Rule 404(b). The State presented evidence that, when Mr. Grabb (a former member of the Pagans) proposed to another man that the two "hit a lick on" (or rob) Mr. Vincent, the second man recorded a conversation in which Mr. Grabb did not refer to Mr. Vincent by name but instead talked about robbing "the top dog" who "rode a lot." This second man, a self-described "motorcycle enthusiast" who once belonged to another motorcycle club, later joined several other individuals—including some men "prospecting" to be Pagan members—at Mr. Vincent's home for a party in Mr. Vincent's detached garage, which served as a sort of Pagan clubhouse. Mr. Grabb also attended this party, and, as he prepared to leave at the end of the evening, Mr. Vincent shot him four times before the other men repeatedly kicked him. At Mr. Vincent's direction, one or two of those men drove Mr. Grabb away from the residence and left him by the side of the road, where he bled to death. It is apparent that Mr. Vincent enjoyed a revered status among the men who joined him in killing Mr. Grabb. The basis of the relationships of these several individuals in motorcycle club culture was necessary to a "'full presentation' of the case, [and was] appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae."'" *State v. LaRock*, 196 W. Va. 294, 312 n.29 470 S.E.2d 613, 632 n.29 (1996). Thus, the circuit court's ruling was reasonable, and we find no error.[3]

For the foregoing reasons, we affirm.

---

[2] Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.

Syl. Pt. 2, in part, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994).

[3] On the same grounds that we find that evidence of Mr. Vincent's motorcycle club affiliation was intrinsic to the State's presentation of its case, we likewise find that the circuit court did not err in concluding that the evidence was both relevant and more probative than prejudicial.

2

**ISSUED:** December 6, 2022

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Chief Justice John A. Hutchison
Justice William R. Wooton


Hutchison, Chief Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision. Accordingly, I respectfully dissent.


Wooton, Justice, dissenting:

Based on the *facts* of this case, rather than the State's *characterization* of those facts, I would have put the case on the Rule 19 docket to determine whether the State's constant references at trial to the petitioner's leadership role in the Pagans Motorcycle Club were so prejudicial as to require reversal of his conviction.

The State's theory of the case was that everyone who was present at the time of the murder of Luka Grabb was motivated by the fact that the petitioner was the president of the local Pagans club. As the State contended on appeal, "[without] knowing that petitioner was president of a powerful club, the jury may not have understood why none of the men present intervened when petitioner shot [the victim], and it might not have understood why so many were contacted to come to petitioner's home, or why no one called 9ll." The problem with this theory is that there are no facts to back it up. The killing was motivated by the victim's plan to rob the petitioner – a plan the victim unwisely confided to Rusty Kirk, who then went straight to the petitioner with the information. Neither the victim, Mr. Kirk, nor any of the other individuals at the petitioner's home

on the night in question were Pagans,[4] and there is no indication that the petitioner's membership in the club had anything to do with the genesis of the killing: the victim's stated intent to "hit a lick," meaning to rob the petitioner.

The victim in this case was brutally murdered, which presents a temptation for a reviewing court to justify the admission of evidence and argument that clearly should have been excluded pursuant to a dispassionate Rule 404(b)[5] analysis. But the law is the law, and the petitioner is entitled to its benefit: the fact that he is a Pagan was not in any way relevant, let alone intrinsic, to the crime, and the prejudicial impact of the jury hearing – over and over – that he is the president of a "violent criminal organization" vastly outweighed any probative value the evidence might have had.

For these reasons I respectfully dissent. I would have put this case on the Rule 19 docket so that the Court could consider the real issue presented in this case: whether the erroneous admission of the so-called Pagan evidence was harmless beyond a reasonable doubt.

---

[4] Several were motorcycle enthusiasts. However, there is no evidence that any of the men present at the time of the killing were currying favor with the petitioner as a means to gain membership in the local Pagans club.

[5] W. Va. R. Evid. 404(b).