# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**May 19, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff below, Respondent,**

**vs.) No. 22-719** (Fayette County CC-10-2020-F-76)

**Sherie Titchenell,**
**Defendant below, Petitioner.**

## MEMORANDUM DECISION

The petitioner,[1] Sherie Titchenell, was indicted along with two other defendants, Julie Browning and Marty Browning, for one count of death of a child, eight-year-old Raylee Browning, by abuse in violation of West Virginia Code § 61-8D-2a(a), and one count of child neglect resulting in death of Raylee in violation of West Virginia Code § 61-8D-4a. After a joint trial spanning six days, the jury acquitted the three defendants on the abuse count in the indictment but convicted all three of them on the neglect count. On August 21, 2022, the circuit court entered an order sentencing the petitioner to three to fifteen years of incarceration. The petitioner now appeals,[2] arguing that the circuit court erred by (1) allowing hearsay statements from Raylee and the petitioner's co-defendants to be considered by the jury; (2) preventing the petitioner from cross-examining the co-defendants at trial and preventing her from directly examining defense witnesses; (3) finding certain evidence to be intrinsic rather than extrinsic; and (4) allowing the jury to convict her of offenses that occurred in a different county than the county in which she was tried.

After considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the conviction is appropriate under Rule 21 of the Rules of Appellate Procedure.

*FACTS*

The petitioner is the sister of her co-defendant Julie Browning. Ms. Browning and Marty Browning are a couple who married sometime after Raylee's death. Raylee is Mr. Browning's

---

[1]The petitioner appears by counsel Evan J. Dove. The respondent State of West Virginia appears by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease Proper.

[2]The other two defendants also appeal, but we affirm their convictions separately.

1

biological daughter, but she is not related to Ms. Browning. Also included in the family were four children, only two of which are germane to this case, Raylee and B.M.[3] who is Ms. Browning's biological daughter but is not related to Mr. Browning.

From 2014 to January 2018, the family (that is, the three co-defendants and the children) lived together in Mount Lookout, Nicholas County, West Virginia. In 2018, the family moved to Oak Hill, Fayette County, West Virginia. While in Nicholas County, the children attended public school. After the family moved to Fayette County, the family began to homeschool the children. The three co-defendants shared responsibility for Raylee's care and for that of the other children.

On December 26, 2018, the petitioner called for an ambulance claiming that Raylee had suffered a seizure. Upon the ambulance's arrival, the petitioner took Raylee's body to it. One of the responding EMTs described Raylee as "lifeless or dead," "wasn't breathing," and "cyanotic." After being transported to Plateau Medical Center, Raylee was treated by a team of medical providers, including a nurse who described Raylee as "lifeless, no pulse, no rhythm on [the] cardiac monitor, . . . pale, cool, no signs of life." It appeared that Raylee had been dead for some time. Raylee's body temperature was so low that Plateau's instruments (which could measure temperature as low as eighty-four degrees Fahrenheit) could not detect it.

Subsequently, an autopsy determined that Raylee died from sepsis caused by necrotizing bronchial pneumonia. The State adduced medical testimony that Raylee's symptoms would not have developed suddenly, that Raylee "would be expected to manifest symptoms readily observable to a layperson," and that "[a]ny layperson would recognize the child was very ill." This evidence was reinforced by testimony from B.M. that several days before Christmas "[y]ou could tell visibly that [Raylee] was sick. She claimed that she felt sick." According to B.M., "[w]hen [Raylee] breezed [sic] it sounded like she was snoring, you know like when a pug breathes."[4] B.M. testified that two or three days before Christmas Raylee "sounded like she couldn't breathe, like she was fighting for her air, like she was snoring." B.M. also did not see anyone give Raylee food, medicine, or water, even though Raylee could not get up to get herself food or water.

The State presented expert medical testimony that being deprived of food and water can depress the immune system and hasten illness and that there is an increased risk of mortality in someone who is undernourished, mortality that can be secondary to complications of pneumonia. The State also adduced medical testimony that hydration is particularly important if someone is ill.

The State introduced significant medical testimony that a reasonable parent taking proper precautions should have detected Raylee's symptoms and intervened to provide her with medical care that would have resulted in Raylee surviving her illness. It also adduced testimony that for children who are eight years old, the provision of nutrition and hydration is the responsibility of a caretaker.

---

[3]We use initials to identify B.M. *See* W. Va. R. App. P. 40(e).

[4]B.M. explained that "pug" was a reference to the breed of dog.

2

The petitioner asserts that her rights were violated when the circuit court allowed into evidence alleged testimonial and non-testimonial hearsay of Raylee and the adverse hearsay of the petitioner's co-defendants. We do not agree.

"Three separate levels of scrutiny apply to Confrontation Clause claims: The circuit court's order is reviewed for abuse of discretion; its factual findings are reviewed for clear error; and its legal rulings are reviewed de novo." *State v. Martin*, No. 13-0112, 2013 WL 5676628, at *2 (W. Va. Oct. 18, 2013) (memorandum decision).

In Syllabus Point 6 of *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006), *holding modified on other grounds by State v. Jako*, 245 W. Va. 625, 862 S.E.2d 474 (2021), we held:

> Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness.

"*Crawford* makes clear that only 'testimonial statements' cause the declarant to be a 'witness' subject to the constraints of the Confrontation Clause. Non-testimonial statements by an unavailable declarant, on the other hand, are not precluded from use by the Confrontation Clause." *Id*. at 373, 633 S.E.2d at 318. "[A] testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. Syl. pt. 8. The United States Supreme Court has explained, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark,* 576 U.S. 237, 245 (2015) (citations omitted).

"Hearsay" is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." W. Va. R. Evid. 801(c). "[A]dmission of non-testimonial hearsay . . . continue[s] to be policed by the Rules of Evidence[.]" *State v. Kennedy*, 229 W. Va. 756, 764, 735 S.E.2d 905, 913 (2012). In that regard, we have recognized that "trial courts have broad discretion in making evidentiary rulings[.]" *State v. Beard*, 194 W. Va. 740, 748, 461 S.E.2d 486, 494 (1995). Consequently, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard," Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 61, 511 S.E.2d 469, 472 (1998), a particularly appellant-unfriendly standard. *See In re C.B.*, 245 W. Va. 666, 676, 865 S.E.2d 68, 78 (2021).

The petitioner first points to testimony offered at trial by Carrie Ciliberti. Ms. Ciliberti was Raylee's physical education teacher at Nicholas County schools. Raylee made certain comments to Ms. Ciliberti while at school referring to bruises and scabs on Raylee's legs. According to Ms. Ciliberti, Raylee told her that if she had any questions about the bruises, she would have to contact

3

Mr. Browning and ask him. Additionally, Raylee told Ms. Ciliberti that Mr. Browning did not allow her to keep a shirt Ms. Ciliberti had given to her. We do not believe that Raylee's statements to Ms. Ciliberti were testimonial. A child exhibiting bruises and scabs to a teacher is not testimonial evidence. Indeed, Raylee expressly declined to offer anything "testimonial" such as identifying the person or persons who caused her injuries or how the injuries were caused. Moreover, out-of-court statements to schoolteachers "are much less likely to be testimonial than statements to law enforcement officers." *Clark*, 576 U.S. at 246.[5] Furthermore, Raylee's young age supports our conclusion that her statements to Ms. Ciliberti were non-testimonial as "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id*. at 247–48. Additionally, "[t]here is no indication that the primary purpose of the conversation was to gather evidence for . . . prosecution." *Id*. at 247. Given that Raylee was in the first grade when she spoke to Ms. Ciliberti, it is "extremely unlikely that a . . . child in [Raylee's] position would intend h[er] statements to be a substitute for trial testimony. On the contrary, a young child in these circumstances would simply want the abuse to end, would want to protect other victims, or would have no discernible purpose at all." *Id*. at 248. Considering the relevant circumstances, Raylee's statements to Ms. Ciliberti were not testimonial, and their introduction did not violate the Confrontation Clause.

The petitioner next points to certain testimony offered at trial by B.M. concerning statements Raylee made to the co-defendants, as well as trial testimony from B.M. regarding statements the co-defendants made concerning Raylee: (1) that Raylee wanted to go to the hospital before she died; (2) that the petitioner said Raylee was "faking" her illness, (3) that the petitioner asked Raylee if she was alright with spending Christmas in the hospital, and Raylee replied affirmatively, and (4) that all three co-defendants discussed taking Raylee to the hospital, but did not do so.

"Generally, out-of-courts [sic] statements to family or friends are not testimonial statements that fall within the purview of the Confrontation Clause." *Williams v. Superintendent, SCI Greene*, No. CIV.A. 11-4319, 2012 WL 6062507, at *11 (E.D. Pa. June 15, 2012), *report and recommendation adopted*, No. CIV.A. 11-4319, 2012 WL 6057929 (E.D. Pa. Dec. 4, 2012); *Packer v. Jones*, No. CIV.A. 06-00665-CG-B, 2010 WL 7367820, at *11 (S.D. Ala. Mar. 12, 2010) ("[C]ourts have generally held that statements made in private conversations to friends and family members are not testimonial."). We conclude that the petitioner has failed to show her rights under the Confrontation Clause were violated.

To the extent that B.M's testimony was hearsay, its admission was authorized by the West Virginia Rules of Evidence. West Virginia Rule of Evidence 803(3) provides that the following is not evidence excluded by the rule against hearsay, regardless of the declarant's availability:

---

[5]Although Ms. Ciliberti was a mandatory abuse and neglect reporter and reported her concerns that Raylee was being abused and neglected to Child Protective Services, "mandatory reporting statutes alone cannot convert a conversation between a concerned teacher and her student into a law enforcement mission aimed primarily at gathering evidence for a prosecution." *Clark*, 576 U.S. at 249.

4

A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

The challenged testimony reflects the respective states of mind of the defendants in the days prior to Raylee's death. The testimony shows the defendants intended to deny Raylee necessary medical care. Accordingly, the testimony was admissible under Rule of Evidence 803(3) and the circuit court did not err in admitting it.

The petitioner additionally complains that the circuit court erred in allowing testimony from a nurse that she overheard Mr. Browning in 2015 threaten to strike Raylee if she cried during a vaccination. We first observe that this testimony had nothing to do with the petitioner and, for that reason at least, it was not prejudicial to her. We also observe that this testimony is not testimonial under the Confrontation Clause. *See Rice v. Hudson,* No. 1:06CV2264, 2009 WL 2410436, at *3 (N.D. Ohio Aug. 4, 2009) ("Courts have generally held that statements made in private conversations to friends and family members are not testimonial.").

The petitioner further complains that the circuit court allowed into evidence testimony from Richard Looney, Mr. Browning's friend, that Mr. Browning told him that he received a telephone call from Ms. Browning on December 20, 2018, that Raylee was sick and needed to go to the hospital. The petitioner was not included in, or referenced by, this conversation and, as such, was not prejudiced by this testimony.

The petitioner also asserts that "in regard to hearsay testimony that this Honorable Court may not view as testimonial in nature, her rights were still violated under the Fourteenth Amendment right to due process as she was denied the ability to further develop the testimony of an unavailable witness." The petitioner cites no pertinent authority in support of this claim. This omission by the petitioner is fatal to her claim as "[t]his Court has repeatedly emphasized that issues that are not supported with pertinent authority will not be considered on appeal." *Birchfield v. Zen's Dev., LLC*, 245 W. Va. 82, 89, 857 S.E.2d 422, 429 (2021); *see also State v. Allen*, 208 W. Va. 144, 162, 539 S.E.2d 87, 105 (1999) ("In the absence of supporting authority, we decline further to review this alleged error because it has not been adequately briefed.").[6]

---

[6]The petitioner also complains that the circuit court entered an order before trial that prevented the State from introducing any statements from the defendants in the State's case-in-chief. The State argued before us that this pretrial ruling applied only to statements made by the co-defendants to the police. We do not address which party is correct because the petitioner's brief does not show where she raised this issue in the circuit court. This omission is fatal to her claim. *See* W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."); *id*., clerk's comments ("Briefs must carefully cite to the record, and must specifically set forth where in the record each assignment of error was preserved.").

Finally, to the extent the petitioner raises evidentiary error, we believe that the circuit court's evidentiary rulings were within the circuit court's wide discretion in determining whether to admit or exclude evidence and we will not disturb its rulings in this regard. *See State v. Roy*, 194 W. Va. 276, 286, 460 S.E.2d 277, 287 (1995) ("[A] decision regarding the admission of evidence is within the broad discretion of the trial court and will be overturned only upon an abuse of that considerable discretion.").

### *LIMITATIONS ON EXAMINATION OF WITNESSES*

The petitioner next argues that the circuit court erred by preventing the three defense attorneys in the joint trial from conducting three separate direct examinations of defense witnesses. The petitioner also complains that the circuit court limited her cross-examination of Ms. Browning. We will not address the validity of the circuit court's procedures because the petitioner has failed to show that these issues were preserved by her at trial for appellate review.[7] *See* W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."); *id.*, clerk's comments ("Briefs must carefully cite to the record, and must specifically set forth where in the record each assignment of error was preserved."); *State v. Ward*, 245 W. Va. 157, 162, 858 S.E.2d 207, 212 (2021) ("Our general rule is that nonjurisdictional questions raised for the first time on appeal will not be considered.").

### *RULE 404(b)*

Prior to trial, the circuit court determined that certain evidence would be admissible at trial. This was evidence it found to be intrinsic and thus not subject to the constraints of evidence admitted under West Virginia Rule of Evidence 404(b). *See State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) (per curiam) ("This Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)."). The petitioner "avers that the lower court abused its judicial discretion when it allowed over three (3) years of alleged prior bad acts to be used by the State in its case-in-chief against the Petitioner." The petitioner does not, however, specifically identify in her appeal brief what constituted this three years of evidence. While the petitioner's brief does cite to broad swaths of the appendix record,[8] this is not sufficient under our rules of appellate procedure, which require "appropriate and *specific*" references and

---

[7]While we recognize that Mr. Browning objected at trial concerning the direct examination issue, the petitioner did not join in Mr. Browning's trial objection and "'generally, failure to join in the objection or motion of a codefendant constitutes a waiver of the issue on appeal.'" *State v. Johnson*, 238 W. Va. 580, 595, 797 S.E.2d 557, 572 (2017) (citation omitted).

[8]The petitioner's brief, for example, directs us to "the trial testimony of Bryanna Baker, former Nicholas County CPS worker (A.R. Vol. V, Trial Tr., June 9, 2022, p. 293-320); and (A.R. Vol. VIII, Evidentiary Hearing Transcript, February 8, 2022)" and the "testimony of Carrie Ciliberti, (A.R. Vol. V, Trial Tr., June 9, 2022 & A.R. Vol. VIII, Evidentiary Hearing Transcript, February 8, 2022); testimony of Kara Gillespie (A.R. Vol. V, Trial Tr. June 9, 2022 & A.R. Vol. VIII, Evidentiary Hearing Transcript, February 8, 2022); testimony of Maria Parks (A.R. Vol. IV, Trial Tr. June 7, 2022); and Bryanna Baker (A.R. Vol. V, Trial Tr., June 9, 2022)."

citations to the record on appeal. W. Va. R. App. P. 10(c)(4) & (7) (emphasis added). *See Doss v. Hill-Doss*, No. 18-0345, 2019 WL 4391282, at \*4 n.8 (W. Va. Sept. 13, 2019) (memorandum decision). Therefore, we do not address her claim.

For the above reasons, the judgment of the Circuit Court of Fayette County, West Virginia, is affirmed.

Affirmed.

**ISSUED:  May 19, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Charles S. Trump IV
Judge Daniel W. Greear, sitting by temporary assignment.

**DISQUALIFIED:**

Justice C. Haley Bunn